**Betty Newbill THREADGILL, Plaintiff–Appellant,**

v.

**John O. THREADGILL, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

July 16, 1987.

Application for Permission to Appeal Denied by Supreme Court Nov. 9, 1987.

**420**

J. Douglas Overbey, Barry W. Eubanks, Robertson, Williams, Ingram & Overbey, Knoxville, for plaintiff-appellant.

Bernard E. Bernstein, Bernstein, Susano & Stair, Knoxville, for defendant-appellee.

## OPINION

LEWIS, Judge.

Plaintiff, Betty Newbill Threadgill, and defendant, John O. Threadgill, were divorced on February 16, 1982. Prior to the divorce, they had entered into a property settlement agreement (PSA), which was incorporated in the final decree of divorce.

On October 21, 1985, plaintiff filed a petition in the Chancery Court for Knox County in which she alleged that the defendant had failed and refused to abide by certain provisions of the PSA. Those provisions are as follows:

### 12. *Child Support and Periodic Alimony.*

(a) Husband shall pay as periodic alimony for the maintenance and support of Wife and as child support for the maintenance and support of the two children, the following amounts and at the times herein below provided:

(1) Alimony of $525.00 plus $400.00 child support on the first day of each month.

(2) Alimony of $525.00 plus $400.00 child support on the fifteenth day of each month.

(3) Alimony of $1,500.00 each calendar quarter, payable on the first day of each such calendar quarter.

(4) The parties agree to negotiate in good faith regarding an increase in child support and/or periodic alimony to be effective May 1, 1983. The parties further agree to negotiate in good faith periodically in the future, depending upon the need and circumstances of the parties. This provision shall not be construed as a waiver by wife or any other right or remedy to which she would otherwise be entitled by law.

(5) Alimony of $2,000.00 per year payable on or before June 15 of each year.

(6) Husband agrees that so long as Wife has not first remarried to trade Wife's automobile for a new automobile on or before June 15, 1985, and again before February 15, 1991, said automobiles to be comparable to the 1980 Audie [sic] presently owned by Wife and the purchase of same be considered two-thirds periodic child support and one-third periodic alimony.

(7) Husband agrees to pay all insurance, repairs and fuel on and for Wife's automobile which payments shall be considered two-thirds periodic child support and one-third periodic alimony.

(8) Husband agrees to purchase and/or reimburse Wife for the purchase of all clothing for the two children.

(9) Husband shall pay for all substantial maintenance and repairs to the residence which are necessary and appropriate to keep the residence in a good state of repair during the minority of the children or until Wife remarries; provided, however, that Husband shall have the right to approve estimates of such work in advance. Within eighteen (18) months after the entry of the final decree the Husband will pay for certain improvements on the Wife's residence consisting of painting the house inside and out, resurfacing the driveway, installing and painting new gutters and redoing the interior lighting. However, expenses for these items shall not be incurred until estimates are obtained and the estimates are approved by Husband and Wife. If within an additional eighteen (18) months thereafter Wife does not remarry then Husband under the same terms will pay for remodeling the kitchen and replacing the sliding glass doors in the living room—dining area of the house. Additionally, expenses for these items shall not be incurred until estimates are obtained and the estimates approved by Husband and Wife. All maintenance and repairs provided in this paragraph shall be considered two-thirds periodic child support and one-third periodic alimony.

(b) Husband's liability to Wife provided in this Paragraph 12(a)(1), (2), (3), (4), (5), (7), (9), (12), and (13) above, unless otherwise specifically limited, shall

continue as long as Wife shall live, or until her remarriage.

In her petition, plaintiff sought to have the trial court order the defendant to pay all of the arrearages brought about by his alleged failure to abide by the PSA and to find defendant in contempt for willful failure to abide by the court's decree.

The defendant answered, denying that he was in arrearage in payments under the PSA. He also filed a counter-petition in which he sought (1) a modification in alimony and child support, and (2) custody of the parties' two minor children.

Following an evidentiary hearing, the trial court entered an order which, *inter alia,* (1) provided that defendant's claim for reduction of periodic alimony under paragraph 12(a)(1) and (2) of the PSA be granted and alimony reduced to $1,000 per month retroactive to January 1, 1985, and cancelled the periodic alimony obligation under paragraph 12(a)(3) and (5) retroactive to January 1, 1985; (2) denied plaintiff's claim for payment of arrearages for automobile expenses under paragraph 12(a)(7) of the PSA; (3) found that defendant was in arrearages in the amount of $2,000 for 1982, $1,455 for 1983, $4,502 for 1984, and $1,512 for 1985, which took into account the retroactive reduction, for a total of $9,469; (4) held that defendant was not in contempt of court; (5) held that paragraph 12(a)(9) of the PSA regarding house maintenance, repairs and renovation was to be enforced in its entirety, but that plaintiff was not to be reimbursed for past maintenance and expenses not paid for by the defendant until such time as she furnished estimates or bills for those expenses, (6) denied defendant's petition insofar as he sought custody of the minor children but did modify visitation privileges, (7) denied defendant's claim for reduction in child support obligations, (8) awarded plaintiff $2,500 for attorney's fees incurred by her, and (9) granted defendant's claim for one-half of the silverware, but denied plaintiff's claim for a security interest in the silverware.

The plaintiff has appealed and presents six issues. Her first issue is: "Did the trial court err in granting defendant's claim for reduction in periodic alimony?"

Plaintiff contends that the trial court erred by failing to take into consideration the mandate of Tenn.Code Ann. § 36–5–101(a)(1) and (d). Defendant, in essence, argues that the provisions of Tenn. Code Ann. § 36–5–101(d) apply when alimony is initially set but not when a petition for modification is filed.

■ The factors set forth in Tenn.Code Ann. § 36–5–101(d)[1] are applicable in the

---

1. Tenn.Code Ann. § 36–5–101(d).

d. It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (3) of subsection (a) of this section. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension,

profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve his or her earning capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age, and physical and mental condition of each party;

(5) The extent to which it would be undesirable for a party to seek employment outside the home because he or she will be custodian of a minor child of the marriage;

(6) The separate assets of each party, both real and personal, tangible and intangible;

(7) The provisions made with regard to the marital property as defined in § 36–4–121;

(8) The standard of living of the parties established during the marriage;

(9) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and home-

initial grant of support and maintenance and also, where relevant, must be taken into consideration in arriving at whether there has been a change of circumstances that requires a modification of support and maintenance.

In reducing the alimony from $20,000 per year to $12,000 per year, the trial court found as follows:

> It bears noting at the outset that this Court cannot modify the PSA, as reduced to judgment, merely because the provisions thereof are onerous or even unfair in the extreme *if* the provisions were onerous or unfair when the PSA was executed. Stated another way, this Court cannot substitute its personal opinion for that of the parties, especially where there was no evidence of fraud or overreaching in the execution of the PSA. The provisions of the PSA are somewhat onerous to husband, but the conclusion is inescapable that they were more onerous at the time of execution of the PSA than at the present time. Husband's financial situation has improved, not deteriorated, since the execution of the PSA. Accordingly, even though the provisions of the PSA impose a rather heavy burden upon husband, this Court may not modify his obligations in that regard unless there is evidence of changed circumstances to warrant such a modification. A fair inference can be drawn from the evidence (as well as the explicit testimony of husband himself) which indicates that husband was willing to agree to anything, and willing to sign anything, to get out of what he felt to be a[n] unbearable marriage. This probably happens with unfortunate frequency, but it is a circumstance for which the Court should not give relief. Moreover, husband is himself a highly competent attorney and it is impossible for him to deny knowledge of the ramifications of his actions at the time of execution of the PSA.

> Therefore, if there are "changed circumstances" regarding alimony, such changed circumstances must be with reference to wife. At the time of the divorce she was not employed. Throughout 1985 and to the present time she has been employed, making slightly over $19,000.00 per year, as well as receiving approximately $250.00 per month as travel allowance. The PSA obligates husband to pay $1,050.00 per month as alimony, $1,500.00 per calendar quarter as alimony and a yearly payment of $2,000.00 as alimony. Accordingly, husband pays $20,600.00 per year as alimony. Are there "changed circumstances"? Obviously, there are. Wife was unemployed at the time of the divorce and it must be presumed that the amount of alimony was agreed upon between these parties after considering wife's needs and husband's ability to pay. Wife's need for alimony has decreased due to her employment. Indeed, she is making nearly as much from her employment as she receives in alimony. At the same time, husband's ability to pay has increased. Husband's protestations of poverty are simply not supported by the evidence. Indeed, the evidence is overwhelming that husband enjoys an envious lifestyle. There is no need to enumerate examples; the case was reported and the examples are legion. The alimony should be reduced, and but for husband's increased income [and Paragraph 12(a)(4)] the Court might very well terminate alimony altogether. However, outright termination of alimony in this case is not indicated. The alimony is reduced to $1,000.00 per month. The question then becomes, when should such reduction become effective? Wife has been employed throughout 1985 and until the present time. She insists, how-

maker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party.

(10) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(11) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

ever, that husband did not file a Complaint seeking a modification and therefore there should be no "retroactive modification". In light of husband's expertise as an attorney, wife's argument has a great deal of merit. On the other hand, wife herself is a highly educated woman and both of these parties cavalierly ignored the PSA almost from its inception. As noted during the trial, the PSA was honored more in its breach than it was in its performance. This particular facet will be discussed further with regard to the issue of custody. With respect to the issue of Modification of Alimony, the Court determines that it should be retroactively applied back to January 1, 1985.

The trial court took into consideration only one factor in modifying the alimony, *i.e.*, that at the time of the divorce plaintiff had no income and that at the time of the hearing she was employed at a salary of some $19,000 per year.

The trial court "presumed that the amount of alimony was agreed upon between these parties after considering the wife's needs and the husband's ability to pay."

We review this case *de novo* upon the record made in the trial court with a presumption that the findings of fact of the trial court are correct unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn.R.App.P.

■ Here, the preponderance of the evidence is otherwise. There is no evidence in the record to support the trial court's presumption "that the amount of alimony was agreed upon between these parties after considering wife's needs and husband's ability to pay." It could as easily be presumed that the parties agreed upon the amount of alimony contemplating that the plaintiff would return to work.

It might also be presumed that at the time the PSA was entered into that the plaintiff's needs were greater than the defendant's ability to pay since the PSA contemplates that the parties "will negotiate in good faith regarding an increase in child support and/or alimony to be effective May

1, 1983." There are many presumptions which could be made. However, neither the trial court nor this Court may make such presumptions. There must be some evidence in the record.

The defendant filed the counter-petition seeking a modification in alimony and child support. The burden in the trial court is upon him to show such a change of circumstances that a modification is warranted. He failed to carry that burden in the trial court. There is nothing in the record to support the trial court's finding that alimony should be modified.

This issue is sustained.

Plaintiff's second issue is: "Did the trial court err in reducing periodic alimony retroactively?"

■ The hearing in this case was held on 3 March 1986. The trial court, following that hearing, granted a reduction in alimony retroactive to January 1, 1985. This retroactive reduction was based upon the wife's earnings. For the reasons set forth under issue one and for the following reason, this issue is sustained.

In pertinent part, Tenn.Code Ann. § 36–5–101 provides:

[O]n application of either party, the court may decree an increase or decrease of such allowance only upon a showing of a substantial and material change of circumstances. Any such modification of an allowance shall be made retroactively only upon a specific written finding that the obligor was unable to pay the full amount of such allowance through no intentional fault of his or her own and that the facts of the case require such a modification retroactively in order to meet the ends of justice.

The trial court made no finding that the defendant "was unable to pay the full amount of the alimony 'through no ... fault of his ... own and the facts of the case require such a modification retroactively in order to meet the ends of justice.' " The trial court did find that the "husband's ability to pay has increased. Husband's protestations of poverty are

simply not supported by evidence. Indeed, the evidence is overwhelming that husband enjoys an envious lifestyle."

The legislature has seen fit to allow a modification of alimony to be made retroactively only upon a specific written finding of an inability to pay through no intentional fault of the obligor and that retroactive modification be made in order to meet the ends of justice.

No such finding was made by the trial court, and the record before us would support no such finding.

Issue two is sustained.

Plaintiff's third issue is: "The trial court erred in failing to grant plaintiff's claim for arrearages for her automobile expenses as provided in Paragraph 12(a)(7) of the property settlement agreement."

Paragraph 12(a)(7) does provide that the defendant will "pay all insurance, repairs and fuel on and for [plaintiff's] automobile, which payments shall be considered two-thirds periodic child support and one-third periodic alimony."

The trial court found, as to this provision, as follows: "Firstly, although the PSA clearly obligates [defendant] to pay [plaintiff's] fuel bills, the evidence presented by [plaintiff] concerning amounts *not* paid was somewhat vague. Moreover, she receives a travel allowance amounting to $.20 per mile from her employer."

▆▆ We have reviewed the evidence concerning the alleged arrearage in automobile expenses and concur with the trial court that the evidence is "somewhat vague." The burden of proof was upon plaintiff to show by a preponderance of the evidence that defendant had failed to pay the automobile expenses, and the amount of those expenses. She failed to carry that burden.

The record also supports the finding that since September 1984 plaintiff has received either a monthly automobile allowance of $250 or a twenty-cents-per-mile mileage allowance for automobile expenses from her employer. Since September 1984, there has been a material change of circumstances. As found by the Chancellor, "so long

as the [plaintiff] receives her travel allowance from her employer, [defendant] should not be onerated [*sic*] with paying under Paragraph 12(a)(7) of the PSA." We concur.

This issue is without merit.

Plaintiff's fourth issue is: "The trial court erred in failing to grant plaintiff's claim for arrearages for maintenance and repairs to her residence as provided in Paragraph 12(a)(9) of the property settlement agreement."

The trial court, as to paragraph 12(a)(9), stated:

Paragraph 12(a)(9) of the PSA is hereby enforced in its entirety. Plaintiff is hereby directed to procure estimates for future work and submit such estimates to defendant as well as bills for repair work heretofore performed. Should defendant disapprove of such bills and estimates presented by plaintiff, he shall procure estimates of his own, and the parties shall negotiate over the estimates and bills. If the parties are unable to reach agreement, the parties are granted leave to submit their dispute to this Court for resolution.

As can readily be seen, the trial court found in plaintiff's favor. However, plaintiff insists she should not have been required "to submit estimates for repair work already performed on the residence" because the defendant "had an opportunity to participate in the decisions regarding those repairs and to acquire estimates of his own prior to the time these expenses were incurred."

Paragraph 12(a)(9) provides that the defendant shall have the right to approve estimates in advance of work on the residence and, as to the driveway, new gutters, etc., it provides that expenses for these items "shall not be incurred until estimates are obtained and the estimates approved by the husband and wife."

▆▆ The parties entered into the provisions of paragraph 12(a)(9) and it is not unreasonable to expect both the plaintiff and the defendant to abide by them. The provision in the trial court's order requiring

the plaintiff to submit bills for those expenses already incurred is not unreasonable.

This issue is without merit.

Plaintiff's fifth issue is: "The trial court erred in failing to grant plaintiff's request for her attorney's fees to be paid in full."

Plaintiff presented an affidavit of her attorney which shows that a total of $5,848.04 and expenses of $54.54 was incurred through and including March 2, 1986, in his representing her in this matter.

■ The trial court awarded the plaintiff $2,500 of the attorney's fees incurred. The trial court is vested with wide discretion in matters of the allowance of attorney's fees, and this Court will not interfere except upon a showing of an abuse of that discretion. *Marmino v. Marmino*, 34 Tenn.App. 352, 355, 238 S.W.2d 105, 107 (1950).

There is no showing in the record that the trial court abused its discretion. On appeal, the appellant has the burden of showing that the evidence preponderates against the decree of the Chancellor. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 493, 442 S.W.2d 259, 266 (1969). Appellant here has failed to show that the evidence preponderates against the Chancellor's awarding her $2,500 of the claimed $5,848.04 attorney's fee.

This issue is without merit.

Plaintiff's sixth issue is: "The trial court erred in failing to grant plaintiff a security interest in the silverware awarded to defendant."

Paragraph 6 of the PSA provided that ownership of the silverware of the parties "shall be split evenly between husband and wife as the sole and separate property of each; provided, however, if agreed upon by the said parties, said silverware may remain physically located at the residence at 2117 Tara Hill Drive with wife having the right to use any and all of said silverware so long as it is so physically located."

Plaintiff insists that since defendant has failed and refused to abide by the periodic alimony and child support provisions, she should have a security interest in or lien on that half of the silverware "to be delivered to [defendant] to assure his future compliance with the court's order."

■ While the court may impose a lien against real and personal property of an obligor if necessary to assure compliance with its orders, there is nothing in this record to show that it is necessary to impose such a lien to assure that the alimony and child support will be paid.

This issue is without merit.

Defendant has presented one issue: "The court erred in failing to change custody by vesting the exclusive care, custody and control of the minor children in husband."

The trial court modified the visitation schedule to the extent that the children would visit with the defendant fifty per cent of the time. However, he found that there should be no modification of custody and that the care, custody and control of the minor children should remain with plaintiff.

Rule 13(c), Tenn.R.App.P., provides that the appellate court "may consider those facts established by the evidence in the trial court and set forth in the record." This record was abridged pursuant to the Rules of the Court of Appeals. The record does not contain much of the evidence and exhibits to which the defendant refers in his brief.

■ In the absence of this portion of the record, we must "conclusively presume" that the findings of the trial court are supported by evidence heard in the trial court. *J.C. Bradford & Co. v. Martin Construction Co.*, 576 S.W.2d 586, 587 (Tenn.1979).

This issue is without merit.

The judgment of the trial court is reversed insofar as it retroactively and prospectively reduces alimony awarded to the plaintiff. In all other respects, the judgment is affirmed with costs assessed against the defendant and the cause remanded to the trial court for the collection of costs and for the entry of judgment

awarding plaintiff additional arrearages from January 1, 1985.

SANDERS and ANDERSON, JJ., concur.