# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 12, 2001 Session

## SUSAN BRANNON COOPER v. KENT CLARK COOPER

**Appeal from the Chancery Court for Hamilton County**
**No. 63110,  W. Frank Brown, Chancellor**

**FILED MARCH 22, 2002**

**No. E2001-00716-COA-R3-CV**

---

This appeal from the Chancery Court of Hamilton County questions whether the Trial Court erred in increasing Ms. Cooper's alimony award.  Additionally, it questions whether the Trial Court erred in awarding attorney's fees to Ms. Cooper and in refusing to dismiss her Answer and Counter-Complaint.  We affirm the decision of the Trial Court in part and reverse in part and remand.

**Tenn. Ct. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Christine Mahn Sell, Chattanooga, Tennessee, for the Appellant, Kent Clark Cooper.

Rosemarie L. Bryan, Chattanooga, Tennessee, for the Appellee, Susan Brannon Cooper.

### OPINION

This appeal arises from a "Petition to Terminate Alimony Provisions of Divorce Decree" filed by Mr. Cooper in the Hamilton County Chancery Court on April 14, 2000.  Ms. Cooper filed an Answer and Counter-Complaint on September 14, 2000.  A hearing took place on February 12 and 13, 2001 and Ms. Cooper was awarded an increase in alimony.  Mr. Cooper appeals the decision of the Trial Court and presents for our review three issues which we restate:

> I.  Whether the Trial Court erred in refusing to dismiss Ms. Cooper's Answer and Counter-Complaint in view of the fact that she had previously been found in contempt of court.

> II.  Whether the Trial Court erred in increasing Mr. Cooper's alimony obligation.

III.     Whether the Trial Court erred in awarding Ms. Cooper's attorney's fees in the amount of $7,500.00.

Any other issues raised in this appeal are pretermitted by our opinion below.

Mr. and Ms. Cooper were divorced by final decree on January 13, 1986 ("Final Decree"). During the marriage, Mr. and Ms. Cooper had three children, all of whom have reached the age of majority and are not at issue on the appeal. According to the Final Decree, Mr. Cooper was ordered to pay Ms. Cooper alimony in the amount of $1,000.00 per month as well as any federal income tax Ms. Cooper owed as a consequence. Additionally, Ms. Cooper was awarded custody of one minor child and was awarded $500.00 per month in child support. Mr. Cooper had custody of the parties' two other minor children. By subsequent Order entered June 2, 1987, Mr. Cooper's alimony obligation was increased to $1,090.00 per month and he was relieved of the responsibility to pay Ms. Cooper's federal income tax.

On February 10, 1992, the Trial Court ordered that Ms. Cooper's alimony be reduced to $840.00 per month effective March 1, 1992. On April 14, 2000, Mr. Cooper filed his "Petition to Terminate Alimony Provisions of Divorce Decree." On September 14, 2000, Ms. Cooper filed an Answer and Counter-Petition asking that her alimony be increased.[1] In a Memorandum Opinion and Order entered on March 1, 2001, the Trial Court ordered:

1.     That the Petition to Terminate Alimony Provisions of Divorce Decree filed by Kent Clark Cooper is denied;
2.     That the Counter-Complaint filed by Susan Brannon Cooper is sustained;
3.     That Kent Clark Cooper shall increase the alimony payable to Susan Brannon Cooper to One Thousand Ninety Dollars ($1,090.00) per month, effective March 1, 2001;
4.     That Kent Clark Cooper shall pay to Witt, Gaither and Whitaker the sum of $7,500.00 toward the payment of Ms. Cooper's attorney's fees and expenses;
5.     That the alimony payable by Mr. Cooper shall terminate upon the remarriage of Ms. Cooper, the death of either party, and/or further order of the court; and
6.     That the Clerk's cost of this cause are taxed against Kent Clark Cooper and his surety.

We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996).

---

[1] In addition to the aforementioned litigation, numerous other proceedings have taken place involving alimony, child support and custody. However, it is not necessary to address such proceedings in this appeal.

Mr. Cooper appeals the Trial Court's decision not to dismiss Ms. Cooper's Answer and Counter-Petition to increase alimony. This issue was not specifically addressed by the Trial Court in its Memorandum Opinion and Order entered on March 1, 2001. According to the record before this Court, this issue was first raised by Mr. Cooper following the filing of his "Petition to Terminate Alimony Provisions of Divorce Decree" when he responded to a motion filed by Ms. Cooper.

Mr. Cooper's argument for dismissal of Ms. Cooper's Answer and Counter-Petition to increase alimony derives from the fact she was found to be in wilful contempt pursuant to an order of the Trial Court entered on July 26, 1988. This order was entered based upon inappropriate statements made by Ms. Cooper in two statements submitted to the Court in July, 1988. In a statement titled, "Plaintiff's Response to Order Part I," Ms. Cooper stated, "Plaintiff can no longer deal with this lop-sided Tennessee 'justice' and intends never to set foot in the state of Tennessee for the purpose of court-ordered visitation." Further, Ms. Cooper wrote, "the Court can take the biased CASA report, Mr. Stanley's proposed order based clearly on *ex parte* communications, and any future 'parts' of the instant order and shove them all 'up yours.'" In an Order from the Trial Court entered July 26, 1988, Ms. Cooper was found in wilful contempt of court; however, the punishment was reserved for a future date.

Over the subsequent fourteen years punishment for Ms. Cooper's contempt was never imposed by the Trial Court. Furthermore, no other action was ever taken by either party regarding this contempt until the current litigation ensued. Following Mr. Cooper's instigation of the case *sub judice* by filing his "Petition to Terminate Alimony Provisions of Divorce Decree," Ms. Cooper filed a "Motion to Have Deposition Taken By Telephone and to Limit Testimony to Deposition" on November 29, 2000. An Order was entered on December 13, 2000 ordering that the deposition of Ms. Cooper would be taken by telephone and reserved its ruling as to whether or not Ms. Cooper's testimony would be limited to that telephonic deposition. Ms. Cooper further filed a Supplement to her previous Motion requesting that her testimony be limited to her telephone deposition. Mr. Cooper filed a Motion[2] in response wherein he asserted *inter alia* that Ms. Cooper's requests should be denied until she "purges" herself of the contempt.

According to the record, the Trial Court found Ms. Cooper in contempt of court in an order entered July 26, 1988, and reserved punishment for a future date. Following the order of July 26, 1988, Mr. Cooper filed a Petition to Modify Alimony and Ms. Cooper filed an Answer and Counter-Complaint, for which there was a hearing on February 10, 1992 and an Order was entered on February 21, 1992, *nunc pro tunc*, February 10, 1992. On April 14, 2000, Mr. Cooper again initiated litigation with Ms. Cooper when he filed his "Petition to Terminate Alimony Provisions of Divorce

---

[2] DEFENDANT/PETITIONER'S RESPONSE TO PLAINTIFF/RESPONDENT'S SUPPLEMENT TO MOTION TO HAVE DEPOSITION TAKEN BY TELEPHONE AND TO LIMIT TESTIMONY TO DEPOSITION and DEFENDANT/PETITIONER'S COUNTER-MOTION TO STRIKE THE MOTION AND THE AFFIDAVIT OF CANDACE T. SMITH

Decree" and Ms. Cooper filed her Answer and Counter-Complaint. As already noted, throughout the fourteen years since Chancellor Owens found Ms. Cooper in contempt, nothing has been done by the Trial Court to punish Ms. Cooper.

The Trial Court, in its discretion, chose not to pursue its findings of contempt. The Trial Court entertained subsequent litigation between Mr. and Ms. Cooper. The record is silent as to any further action whatsoever by the Trial Court with respect to the finding of contempt. In the Memorandum Opinion and Order filed by the Trial Court on March 1, 2001 the contempt was not addressed. Mr. Cooper has brought this argument to the attention of the Trial Court and the Trial Court has chosen to ignore it. We find that the Trial Court did not abuse its discretion in this regard.

II.

The next issue on appeal is whether the Trial Court erred in increasing Mr. Cooper's alimony obligation. Mr. Cooper argues that initially, the Trial Court awarded alimony to Ms. Cooper based upon a finding that her medical impairment would prevent her from ever having employment beyond that of minimum wage. Mr. Cooper further argues that in 1992, the Trial Court lowered alimony based upon the fact that Ms. Cooper had retained employment above minimum wage, and that the Trial Court anticipated further downward modification. Mr. Cooper asserts that because the Trial Court did not expect Ms. Cooper to ever acquire employment beyond minimum wage, the fact that she did was unforeseeable at the time of the original award. Mr. Cooper also argues that Ms. Cooper has not only maintained employment beyond minimum wage, but that she has also acquired substantial assets since the last modification and reduced her debt. He additionally asserts that her income has increased and her net worth is now greater than his own. Ms. Cooper has paid off the mortgage on her condominium, has paid off the debt on her car, has a savings account and is building a retirement account with American Express. According to Mr. Cooper, Ms. Cooper is no longer financially strapped as she was at the time of the divorce, and he, therefore, should not have to continue to contribute to her financially. Mr. Cooper contends that theses factors demonstrate a substantial and material change in circumstances.

Mr. Cooper also submits that while Ms. Cooper's net worth has increased, his net worth has decreased as he lost approximately $70,000.00 in day trading for several months in 1999 and 2000. He now has two mortgages on his house,[3] two car notes, and substantial credit card debt. Mr. Cooper maintains that he no longer has the ability to pay alimony as his financial situation has worsened since 1992. Moreover, Mr. Cooper testified that his current spouse, Ms. Polly Cooper, has recently been diagnosed with lung cancer and they are experiencing an increase in medical expenses. Finally, Mr. Cooper argues that the preponderance of the evidence does not support an increase in alimony, but does support termination or reduction.

_____

[3] The second mortgage is $50,000.00 used to cover the day trading loss of $70,000.00.

-4-

Ms. Cooper contends that Mr. Cooper failed throughout the proceedings to show that he was unable to pay Ms. Cooper alimony. Further, Ms. Cooper argues that the Trial Court is restricted to only considering facts since the 1992 alimony modification, and that facts relevant to preceding hearings are *res judicata* as to the current modification. Ms. Cooper maintains that Mr. Cooper failed to demonstrate a substantial change of circumstance and therefore, the Trial Court correctly dismissed Mr. Cooper's petition and granted Ms. Cooper's petition. Additionally, Ms. Cooper asserts that Mr. Cooper's reason for filing the petition, i.e. his unemployment, ceased to exist within several weeks of his filing the petition. Ms. Cooper asserts that her net income has actually decreased since the 1992 hearing and that she has become financially dependent upon her parents, as it was her parents who paid the mortgage on her condominium, bought her a car and loaned her money to help her pay bills. Ms. Cooper argues that she is unable to meet her monthly expenses as her monthly income is $1,686.52 and her monthly expenses are $2,392.12, leaving her a deficit of $705.60.

Appellate Courts give wide latitude to trial court decisions on alimony and maintenance both in its original award and on a petition for modification. *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. Ct. App. 1989). An award for spousal support may be modified upon a showing of a substantial and material change in circumstances. T.C.A. 36-5-101(a)(1).

The party seeking relief on the grounds of substantial and material change in circumstances has the burden of proving such changed circumstances warranting an increase or decrease in the amount of the alimony obligation. *Seal v. Seal*, 802 S.W.2d 617 (Tenn.Ct. App.1990). The change in circumstances must have occurred since the entry of the divorce decree ordering the payment of alimony. *Elliot v. Elliot*, 825 S.W.2d 87 (Tenn. Ct. App.1991). The change must affect the obligor spouse's ability to pay or the obligee spouse's need for the alimony awarded. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987). Furthermore, the change in circumstances must not have been foreseeable at the time the parties entered into the divorce decree. *Elliot v. Elliot*, 825 S.W.2d 87 (Tenn. Ct. App.1991). Whether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court. *Watters v. Watters*, 22 S.W.3d 817 (Tenn. Ct. App. 1999). If the change in circumstances was anticipated or in the contemplation of the parties at the time they entered into the property settlement agreement, such changes are not material to warrant a modification of the alimony award. *Jones v. Jones*, 784 S.W.2d 349, 353 (Tenn. Ct. App.1989). Once that change has been shown to exist, a court should weigh the same statutory factors that were considered in making the original support award. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987).

An alimony recipient's increased income alone is not sufficient to warrant reducing or terminating support. *Sanella v. Sanella*, 993 S.W.2d 73 (Tenn. Ct. App. 1999); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App.1992); *Norvell v. Norvell*, 805 S.W.2d 772 (Tenn. Ct. App.1990).

The decision to modify the alimony obligation is factually driven and requires a careful balancing of several factors. *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. Ct. App.1989). While T.C.A. § 36-5-101(d) enumerates several factors for the court to consider, the need of the spouse

receiving the support is the single most important factor. *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn.Ct. App.1989). In addition to the need of the spouse receiving support, *Cranford* notes that the courts most often take into consideration the ability of the obligor spouse to provide support.

In the original divorce decree, entered on January 13, 1986, the Trial Court stated, *inter alia*, "[i]t further appears that the plaintiff suffers from a medical impairment and that she is unable to obtain and retain gainful employment which would generate any income significantly beyond minimum wage." The Trial Court ordered that Mr. Cooper pay $1,000.00 per month in alimony as well as all income tax incurred as a result of the alimony. In 1992, Mr. Cooper petitioned the Trial Court for modification of his alimony obligation, which was heard on February 10, 1992. Following the hearing, the Trial Court found that there had been a substantial and material change of circumstances which justified a decrease in alimony from $1,090.00 to $840.00 per month. Mr. Cooper testified in that hearing that his income had decreased from approximately $125,000.00 at the time of the divorce in 1986 to $96,000.00 in 1991. Ms. Cooper, on the other hand, was unemployed at the time of the divorce and was making approximately $15,000.00 per year in 1991.[4] Mr. Cooper testified in 1992 that his monthly expenses were $1,200.00 per month more than his monthly income. He also testified that his expenses would continue to increase as one of their children would begin college in the fall of that year. Moreover, he testified that there were home repairs that needed attention and he needed to start saving for retirement. The Trial Court mentioned several factors before reducing alimony. Specifically the Trial Court noted that Ms. Cooper had never paid any child support to Mr. Cooper and that Mr. Cooper had had some reduction in income.

In the "Petition to Terminate Alimony Provisions of Divorce Decree" in the case *sub judice*, Mr. Cooper pleads the following as his basis for the petition:

> the Respondent has now established unequivocally that she is able to obtain and retain gainful employment with American Express for twelve years, she earns a good income, and she has consistently received salary increases. Second, the Petitioner is now unemployed and has been unable to secure new employment. Unemployment constitutes substantial and material change of circumstances pursuant to 36-5-101.

Within two weeks of filing his petition, Mr. Cooper became employed as the general manager of the Sports Barn with a salary of $120,000.00 per year and an additional income from a previous employer of $21,384.00 per year until 2009. Therefore, at the time of the hearing on this matter on February 12 and 13, 2001, Mr. Cooper had a yearly income of $141,384.00. Mr. Cooper further testified that he is currently living in a home he purchased in 1997 for $335,000.00 with

---

[4] This figure does not include the alimony Ms. Cooper receives from Mr. Cooper, but reflects her salary from her employment with American Express.

approximately $74,000.00 in equity. Additionally, he and his wife Polly[5] purchased a condominium in Destin, Florida with a value of $125,000.00 which has an equity of approximately $50,000.00. He has two relatively new vehicles, a 1997 Infiniti J30 and a 1999 Plymouth Voyager. Mr. Cooper testified that his retirement account was worth approximately $10,000.00 to $15,000.00, and that his credit card debt was $7,500.00. Although we do not recite all of Mr. Cooper's monthly expenses, we note that he testified to a monthly deficit of $1,730.05.

In *Jones v. Jones*, 784 S.W.2d 349 (Tenn. Ct. App. 1989), the issue of *res judicata* with respect to a modification of alimony was addressed. This Court stated in *Jones*:

> When a decree has been modified in regard to alimony, "the order entered in that proceeding is res judicata, so that one cannot maintain a second petition for modification unless it can be shown that since the entry of the order on the first petition for modification there has been a substantial change of circumstances." 24 Am.Jur.2d *Divorce and Separation* § 711 (1983) (footnotes omitted). In *Seal v. Seal*, 726 S.W.2d 934 (Tenn.App.1986), this Court stated that "[w]e are of the opinion that the cases and the Code as presently written mandate that the changes sought to be relied upon to effectuate a modification of alimony payments must be shown to have occurred *since* the entry of the decree ordering the payment of alimony." *Id*. at 935 (emphasis in original).

When Mr. Cooper filed this petition he was unemployed. Mr. Cooper's current salary is significantly higher than it was in 1992. He no longer has any minor children living at home. He has purchased a more expensive home and two new automobiles since the 1992 hearing. He incurred a significant loss in day trading which required a second mortgage on his home. An obligor spouse may not avoid paying support by voluntarily assuming new financial obligations. *Elliot v. Elliot*, 825 S.W.2d 87 (Tenn. Ct. App.1991); *Jones v. Jones*, 784 S.W.2d 349 (Tenn.Ct.App.1989). Mr. Cooper's day trading losses were a voluntary financial obligation, as are many of the monthly expenses submitted by Mr. Cooper. Other examples listed on Mr. Cooper's income and expense statement include his golf club membership of $265.00 per month, food for two people listed as $1200.00 per month[6], the condominium in Destin is listed as a $563.12 expense per month, and credit card payments of 10% of the balance equal to $750.00 per month. While this Court acknowledges Polly Cooper's health concerns and are sympathetic, we cannot ignore the fact that Mr. Cooper failed to offer any proof at trial as to actual out of pocket medical expenses not covered

---

[5] Our use of Ms. Cooper's first name should not be construed as any disrespect, but rather is for ease of reference.

[6] Mr. Cooper testified that Polly Cooper has been unable to cook recently so they eat most of their meals in restaurants. He further testified that he often treats his children and their families to dinner as a form of their family entertainment.

by health insurance. Mr. Cooper's assertion that Ms. Cooper is in a better financial position than he and his present wife is without merit.

Ms. Cooper has argued that while Mr. Cooper failed to demonstrate a substantial change in circumstance to justify a decrease or termination of alimony, she has been able to demonstrate a change in circumstance to justify an increase in alimony. We disagree. Ms. Cooper's condominium as well as her automobile have been paid for by her father. While her "net take-home pay" has decreased slightly since 1992, her expenses have also decreased due to the fact that she no longer has a mortgage or car payment. The income and expense statement filed by Ms. Cooper shows a net income of $1,686.52 and expenses of $2,392.12 leaving a deficit of $705.60 each month. However, both parties presented income and expense statements setting forth expenses that exceed monthly income.

In addition to having no indebtedness as to her automobile and condominium, Ms. Cooper also began a savings account through an Incentive Savings Plan (ISP) program available through her employer, American Express. Through the end of September, 2000, she had an adjusted vested value of $26,922.13 in her savings account. She has been building a retirement account through her employer as well. The value of Ms. Cooper's retirement at the end of September, 2000, was $12,000.75. Therefore, Ms. Cooper's argument that her financial situation has worsened since the 1992 hearing is without merit. In 1992, the Trial Court was made aware of the fact that Ms. Cooper had been employed by American Express. The fact that one would begin reaping the benefits of working for a corporation such as taking advantage of an ISP and investing in a retirement plan are certainly foreseeable.

The Trial Court, in making its decision, denied Mr. Cooper's "Petition to Terminate Alimony Provisions of Divorce Decree," and granted Ms. Cooper's Counter-Petition. While each party argues that the other party failed to show a substantial change in circumstance, this Court finds that both parties failed to show a substantial change of circumstance since the 1992 hearing to justify an increase, decrease or termination of alimony. We therefore hold that the Trial Court erred in granting Ms. Cooper's counter-petition and dismiss both petitions.

III.

The last issue on appeal is whether the Trial Court erred in awarding Ms. Cooper's attorney's fees in the amount of $7,500.00. The award of attorney's fees is a matter of wide discretion for the trial court and absent an abuse of discretion we will not overturn that decision. *Marmino v. Marmino*, 238 S.W.2d 105 (Tenn. Ct. App. 1950). We conclude the Trial Court acted within its discretion in awarding Ms.Cooper $7,500.00 in attorney's fees. The award of attorney's fees is affirmed.

The judgment of the Trial Court is accordingly affirmed in part and reversed in part. Both Mr. and Ms. Cooper's petitions addressing alimony are dismissed and the cause remanded for collection of the judgment of attorney's fees and costs below. Costs of appeal as well as costs below

are adjudged equally against the Appellant, Kent Clark Cooper, and his surety, and the Appellee, Susan Brannon Cooper.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE