IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2004 Session

## JO ANN HARRIS v. BILLY HARRIS

**An Appeal from the Chancery Court for Hardeman County**
**No. 11261     Dewey C. Whitenton, Chancellor**

_____

**No. W2003-02112-COA-R3-CV - Filed November 16, 2004**

_____

This is a petition to modify alimony. The parties were married for over forty-one years. In 1998, the wife filed a petition for legal separation. In October 1998, the trial court entered a final decree of legal separation, incorporating the terms of the parties' property settlement agreement. In that agreement, the husband agreed to pay the wife alimony *in futuro* of $1,300 per month. In October 2001, the husband filed a petition to modify his alimony payments, based on the deterioration in his health, which hindered his ability to pay, as well as the wife's receipt of social security benefits and income from investments that diminished her need for alimony. The trial court concluded that, since the 1998 decree, there had been no substantial or material change in circumstances that was not foreseeable when the decree was entered. Consequently, the husband's petition to modify alimony was dismissed. The husband now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Carthel L. Smith, Jr., Lexington, Tennessee, for the appellant, Billy Harris.

Daniel Loyd Taylor and Amy R. Harden, Memphis, Tennessee, for the appellee, Jo Ann Harris.

### OPINION

Plaintiff/Appellee Jo Ann Harris ("Wife") and Defendant/Appellant Billy Harris ("Husband") were married in February 1956 and lived together until April 1997. In May 1997, Wife filed a petition for divorce, later amended to seek a legal separation. In September 1998, the parties executed a property settlement agreement dividing the parties' marital property. In that agreement, Husband agreed to pay Wife alimony *in futuro* of $1,300 per month and to maintain health insurance for Wife until she reached age sixty-five. The parties agreed that, if the parties divorced before Wife attained the age of sixty-five, Husband would maintain health insurance for Wife under the provisions of COBRA at his expense until Wife turned sixty-five. On October 28, 1998, the trial

court entered a decree of separate maintenance/legal separation ("final decree"), which incorporated the parties' settlement agreement. At the time of the final decree, Husband and Wife were sixty-four and sixty-two years old, respectively.

On October 22, 2001, about one month after Wife turned sixty-five, Husband filed a petition to modify the alimony obligation established in the final decree, claiming that a material change in circumstances had occurred since the final decree was entered. Husband noted that, since the entry of the final decree, Wife had begun drawing social security benefits of $463 per month, thereby diminishing her need for alimony. In addition, Husband asserted that his health had deteriorated, preventing him from being gainfully employed and rendering him unable to pay the ordered alimony. In the petition, Husband asked that his obligation be reduced to $800 per month. As the case progressed, however, Husband sought termination of his alimony obligation altogether.

Husband's petition to modify was not immediately set for a hearing. Husband continued to make his $1,300 per month alimony payments through January 2003, while his petition to modify was still pending. On March 19, 2003, Wife filed a petition for contempt against Husband, stating that he had failed to pay alimony in February and March 2003, and arguing that he should therefore be held in contempt. On March 26, 2003, Husband filed a response to Wife's petition for contempt, acknowledging his failure to make alimony payments in the previous two months. In his response, Husband explained that he did not make the payments because he had "serious health problems, ha[d] recently been diagnosed with prostate cancer and [had] undergone surgery therefor. [Husband] states he continues to be unable to work due to his health problems." Therefore, Husband argued, "[Wife's] need for the alimony *in futuro* does not outweigh [Husband's] ability to pay." The depositions of both parties were taken in March 2003.

On May 27, 2003, the trial court held a hearing on Husband's petition to modify alimony and on Wife's petition for contempt. At the hearing, the parties agreed to have the trial court resolve the alimony dispute without live testimony from the parties. The trial court considered the parties' depositions, both at the time of the final decree of legal separation and again in March 2003, as well as other trial exhibits, the trial memoranda, and the arguments of counsel.

Many of the underlying facts were undisputed. In March 1998, Husband's monthly income was $2,828 per month, comprised of social security income ($963), retirement income ($1,655), and income on land ($210). At that time, Wife had argued that Husband derived at least some income from shoeing horses; Husband denied this, asserting, "I don't do much of that now. I have a bad back and I just don't do much of it now." In March 2003, Husband's monthly income had increased slightly to $3,090 per month, still comprised of social security ($1,080), retirement ($1,800), and the same income on land. In addition, by March 2003, Wife was insured by Medicare and Husband was therefore no longer obligated to pay for her health insurance ($267 per month).

The exhibits also included information on Husband's expenses. In 1998, Husband's monthly expenses were $1,757. In March 2003, Husband's monthly expenses were $1,917, not including medical and dental expenses. In his 2003 deposition, Husband acknowledged that he was living with

a woman named Gina Hamm, who deposited an undetermined amount of money into his bank account each month. Husband said that their joint expenses were paid out of his account. Husband also indicated that, in January 2003, he underwent surgery for prostate cancer. He asserted that he was obligated to pay approximately $11,500 in out-of-pocket expenses resulting from the surgery. Wife argued, however, that Husband was not obligated for the entire $11,500, pointing out that the medical bills submitted by Husband were marked "paid" or were paid by insurance.

With respect to Husband's health, in his March 2003 deposition, Husband said that in 1997, prior to the parties' 1998 property settlement agreement, concerns about cancer had prompted him to undergo a biopsy on his prostate each year, and a PSA test at the six month interval between biopsies. He explained the PSA test as "a cancer element in the prostate." The PSA number began increasing (presumably indicating a greater likelihood of cancer), and Husband eventually developed prostate cancer. In January 2003, Husband had surgery to remove the cancer, and he and his physician were hopeful that all of the cancer was removed. When asked whether he was able to shoe horses after the surgery, Husband replied that he was not shoeing horses anymore because he intended to retire.

Other evidence submitted at the hearing related to Wife's need for alimony. In Wife's March 1998 deposition, it was noted that she would reach age sixty-two the following September, and Wife was asked, "Do you know or do you have anyone check for you to determine what type of social security monies that you will receive when you become 62?" Wife replied that she had not. At some point after the final decree of legal separation was entered, Wife began to draw Social security benefits in the amount of $484 per month. In addition, Wife began to receive $700 per month in investment income from investments she had made with her share of the marital estate.[1]

Husband argued that his prostate cancer, and the resulting $11,500 in medical expenses, were unforeseeable. He also contended that Wife's receipt of social security benefits and her receipt of investment income were a material change in circumstances sufficient to justify a reduction in his alimony obligation. Wife argued that Husband's prostate cancer was foreseeable, and that Wife's receipt of Social security benefits and investment income was foreseeable as well. Sometime after the hearing, the trial court entered a decree of divorce by stipulation, but reserved resolution of the issues pertaining to alimony and contempt.

On July 1, 2003, the trial court entered an order on Husband's petition to modify his alimony obligation and Wife's petition for contempt. After considering the record and the trial memoranda, the trial court concluded that Husband had "failed to establish by a preponderance of credible evidence that there has been a substantial and material change of circumstances since the entry of the original decree regarding alimony that was not foreseeable." In addition, the trial court noted that Husband had failed to make his alimony payments from February 2003 through June 2003, found that he had had the present ability to pay the alimony when it was due, and that his failure to do so

---

[1]According to Husband, the value of Wife's portion of the marital property was worth approximately $460,000. Some of it was comprised of investments that had decreased in value over time.

constituted willful contempt of court. Accordingly, in addition to Husband's $1,300 per month alimony obligation, the trial court ordered Husband to pay $100 each month toward the $6,500 arrearage at 10% interest. The trial court also ordered Husband to pay $5,000 of Wife's attorney's fees, also at a rate of $100 each month. From that order, Husband now appeals.

On appeal, Husband argues that the trial court erred in rejecting his petition for a modification of his alimony obligation.[2] He argues that his diagnosis of prostate cancer in January 2003 was unforeseeable at the time the parties entered into the property settlement agreement, and maintains that Wife's income from her investments and social security benefits is sufficient to meet her financial needs. Those facts, Husband argues, constitute a material change in circumstances sufficient to justify modification of his alimony obligation.

The trial court's findings of fact are reviewed *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). Modification of an alimony award is factually driven, calling for a careful balance of many factors. ***Id.*** The trial court is given wide latitude in exercising its discretion in such matters, and its decision will not be disturbed unless it is "not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." ***Id.*** (quoting ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Therefore, the decision of the trial court will not be disturbed unless the record shows that the trial court abused its discretion. An abuse of discretion occurs when the trial court reaches a decision against logic that causes harm to the complaining party or when the trial court applies an incorrect legal standard. ***Eldridge v. Eldridge***, 72 S.W.3d 82, 85 (Tenn. 2001) (citing ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999)).

The Supreme Court has explained the circumstances under which an award of spousal support may be modified or terminated:

> It is well settled that a court may not modify or terminate a spousal support award unless it first finds that a substantial and material change in circumstances has occurred since the entry of the original support decree. ***See*** Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000). In the typical case involving modification of spousal support awards, a change in circumstances is considered to be "material" when the change (1) "occurred since the entry of the divorce decree ordering the payment of alimony," ***Watters***, 22 S.W.3d at 821, and (2) was not "anticipated or [within] the contemplation of the parties at the time they entered into the property settlement agreement," ***id.***; ***see also McCarty v. McCarty***, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); ***Elliot v. Elliot***, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. ***See Bowman v. Bowman***, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

---

[2]Husband does not appeal the trial court's determination that he was in contempt of court for his failure to pay alimony, nor did he appeal the trial court's award of attorney's fees to Wife.

***Bogan***, 60 S.W.3d at 727-28.  Thus, to justify a modification in spousal support, there must be a change in circumstances that occurs after the entry of the final decree that was not within the contemplation of the parties at the time of the decree,[3] and was "substantial," in that it "significantly affects either the obligor's ability to pay or the obligee's need for support."  ***Id.*** at 728.  All of the factors listed in Tennessee Code Annotated § 36-5-101(d) are relevant in considering whether and to what extent an alimony award should be modified, but the two most important factors for consideration remain the obligor's ability to pay and the obligee's need for the alimony.  ***Id.*** at 730.

We first address Husband's argument that his diagnosis of prostate cancer constitutes a material change in circumstances sufficient to justify a reduction in alimony.  Assuming that Husband's diagnosis was not foreseeable, the evidence did not indicate that the cancer or the resulting surgery affected Husband's monthly income.  Indeed, the evidence indicates that Husband has slightly more income now than he did in 1998, and that, in addition, he has been relieved of his obligation to pay for Wife's health insurance.  Husband argues that, as a result of his cancer and his surgery, he is now unable to engage in shoeing horses, a side job that he claims earned him the extra income necessary to pay his living expenses.  However, in 1998, Husband asserted that he did not "do much of that now" because of a "bad back."  Moreover, in 2003, although Husband indicated that he "intended to retire," he did not testify that the cancer or the surgery had forced him to do so, and there was no other evidence showing that either the cancer or the surgery prevented him from any activities, including shoeing horses.  Husband argues that the $11,500 in medical bills arising out of his surgery reduced his ability to pay alimony.  However, since many of the bills were paid by insurance, the evidence is unclear as to what, if any, out-of-pocket expenses were actually owed by Husband.  Under these circumstances, we conclude that Husband did not show that his diagnosis and surgery significantly reduced his ability to pay alimony.  Therefore, it did not constitute a substantial and material change in circumstances sufficient to justify a modification in his alimony obligation.  ***See Threadgill v. Threadgill***, 740 S.W.2d 419, 424 (Tenn. Ct. App. 1987) (recognizing that the change in circumstances must affect the obligor's ability to pay or the obligee's need for the payment).

Husband also argues that his alimony payments should be reduced or terminated because Wife no longer needs the alimony, based on her receipt of social security benefits and income from her investments.  Clearly, however, Wife's receipt of this income was foreseeable at the time of the final decree.  In October 1998, the time the final decree was entered, Wife was already sixty-two years old and eligible for social security benefits.  As demonstrated by the questions asked of Wife in her 1998 deposition, the parties were aware of that fact when they executed the property settlement agreement.  Whether they were aware at the time of the exact amount of her benefits is inconsequential.  In addition, as part of the property settlement agreement, Wife received approximately $460,000 in marital property.  Husband asserts that it was unforeseeable that Wife would make investments from those assets in order to produce an income stream to supplement Husband's alimony payments.  This argument is without merit.  Furthermore, the record shows that

---

[3]The rather puzzling language in the ***Bogan*** decision appears to imply that "material" means "unforeseen." ***Bogan***, 60 S.W.3d at 727-28.

Wife's monthly expenses increased from approximately $740 in 1998 to $2,427.05 in 2003.[4] Thus, despite Wife's additional monthly income of $1,184 from social security and investments, the evidence overall does not show that her need for the alimony has decreased. Therefore, under these circumstances, we must conclude that the increase in Wife's income since the entry of the 1998 decree is not a substantial and material change justifying modification of Husband's alimony obligation. Thus, we find that the trial court did not err in denying Husband's petition for a reduction in his alimony obligation.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Billy Harris, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[4]Included in these expenses is a monthly payment of $1,000 from Wife to her son for rent. When the parties separated, Wife spent $60,000 to construct an additional bedroom and bathroom onto her son's house for her to live in. Wife said that she and her son have agreed that, if she ever moves out of his home, he will pay her back the $60,000. While she lives there, she pays him $1,000 for rent, utilities, property taxes, and other incidental expenses.