IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 20, 2004 Session

## RONALD HUGH PARCHMAN v. BRENDA PARCHMAN

**Direct Appeal from the Chancery Court for Madison County**
**No. 58411      Joe C. Morris, Chancellor**

_____

**No. W2003-01204-COA-R3-CV - Filed November 17, 2004**

_____

This case involves the validity of a final divorce decree entered by the trial court which incorporated an agreement reached by the parties regarding alimony and property division. The wife subsequently filed a motion for a new trial, or in the alternative to alter and amend the judgment, alleging that the final divorce decree was invalid. The wife alleged that, at the time she entered into the agreement with her husband, she was not mentally competent. The trial court denied the wife's motion. On appeal, the wife alleges that the trial court erred in denying her post-trial motion, as well as in its division of marital property and award of alimony in the final decree. For the reasons contained herein, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

M. Scott Smith, Louis W. Ringger, Jr., Jackson, TN, for Appellant

Lloyd R. Tatum, Henderson, TN, for Appellee

**OPINION**

**Facts and Procedural Background**

We begin by noting that we are presented only with the technical record and two depositions filed post-trial for review. Ronald Hugh Parchman ("Husband") apparently married Brenda Parchman ("Wife") in 1962, and the couple divorced at some point in 1973 or 1974. In approximately 1975 or 1976, Husband and Wife remarried. Two daughters were born of the marriage. One daughter died during the marriage, and the other daughter is no longer a minor.

On March 30, 2001, Husband filed a Complaint for Absolute Divorce in the Chancery Court of Madison County, Tennessee, alleging irreconcilable differences. Wife filed an answer to the complaint and included her counter-complaint for divorce for irreconcilable differences and inappropriate marital conduct. On September 17, 2002, the parties met at the office of Wife's lawyer to negotiate a property and alimony settlement. On September 18, 2002, the late Chancellor Joe C. Morris entered a final divorce decree incorporating the agreement reached by the parties on the previous day. The decree provided for the distribution of the marital property between the parties, instructed Husband to pay Wife $48,630.50, and awarded Wife periodic alimony in the amount of $50.00 per month payable until Wife dies, remarries, or reaches sixty-five (65) years of age.

On October 18, 2002, Wife filed a Motion for New Trial or in the Alternative Motion to Alter or Amend Judgment with the chancery court. Wife alleged that when she entered into the agreement on September 17, 2002, she did not clearly understand what she was signing and her attorney at the time pressured her into accepting the agreement. Wife stated that when she accepted the agreement she was suffering from severe depression related to the death of her daughter and the impending divorce. Wife relayed to the trial court how this prevented her from understanding what she was agreeing to and from making an informed, rational decision. In support of her motion, Wife submitted a letter written to her present attorney by Dr. Rebecca Caperton ("Dr. Capterton"), a clinical psychologist who treated Wife during the divorce. The letter indicates that Wife visited Dr. Caperton's office on October 14, 2002, and explained to Dr. Caperton that she had signed papers under pressure and without fully understanding their meaning. Dr. Caperton was of the opinion that "her depression was so severe at the time she became divorced that she was incapable of making clear, competent, well thought out decisions regarding her best interest."

On February 23, 2003, the chancellor held a hearing on Wife's motion. At the hearing, Wife's counsel submitted the deposition testimony of Dr. Caperton while Husband's counsel submitted the deposition testimony of Charles Cary ("Mr. Cary"), Wife's attorney at the time of the negotiations.[1] The chancellor's order indicates that he took took both depositions under advisement before issuing an order on April 11, 2003, denying Wife's motion.

Following the chancellor's ruling on her motion, Wife filed an appeal to this Court presenting the following issues for our review:

I.    Whether the trial court erred in denying the Appellant's Motion for a New Trial or in the Alternative Motion to Alter or Amend the Judgment;
II.   Whether the trial court erred in awarding alimony without considering the criteria in section 36-5-101(d)(1) of the Tennessee Code;
III.  Whether the trial court erred in approving the property settlement without considering the criteria in section 36-4-121(c) of the Tennessee Code; and

---

[1] Both depositions were taken after the trial in this matter below. The deposition of Dr. Caperton was taken on February 12, 2003, and the deposition of Charles Cary was taken on February 19, 2003.

IV.     Whether the Appellant is entitled to her attorney's fees incurred during the divorce proceedings and on appeal.

In addition to the issues raised by Wife, Husband presents the following issues for our review as well:

V.      Whether the record presented to this Court on appeal precludes this Court from considering whether the trial court erred in the determinations relating to property division and alimony; and

VI.     Whether the Appellee is entitled to attorney's fees pursuant to section 27-1-122 of the Tennessee Code due to the Appellant's filing of a frivolous appeal.

For the reasons contained herein, we affirm the trial court's decisions in this matter and remand for further action consistent with this opinion.

## Alimony and Property Distribution

Generally we review findings of fact by the trial court related to awards of alimony in divorce cases "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2003); *see also Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). We review the trial court's conclusions of law *de novo* giving no presumption of correctness to those findings. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

In reviewing the factual findings made by the trial court, we are constrained to considering "those facts established by the evidence in the trial court and set forth in the record." Tenn. R. App. P. 13(c) (2003). In reviewing the final divorce decree, we note that the chancellor specifically states that, in addition to the pleadings, he entertained the testimony of witnesses in open court to reach his decision.[2] Regarding the trial court's rulings related to alimony and property division, the Appellant has submitted only the technical record for our review and failed to submit a transcript of the evidence presented to the court below.

The Tennessee Rules of Appellate Procedure place the responsibility primarily with the appellant to ensure that a proper record, including a transcript of the evidence, is filed in this Court. Tenn. R. App. P. 24 (2003); *see also McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). "This court cannot review the facts *de novo* without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780,

---

[2] The final decree did not contain a summary of the evidence presented during the proceedings below. If no transcript of the evidence was made, "the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Tenn. R. App. P. 24(c) (2003).

783 (Tenn. Ct. App. 1993) (citations omitted); *see also Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987) (citing *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979)). We agree with the Appellee that the record presented on appeal prevents us from reviewing the trial court's decisions regarding alimony and property division. Therefore, we affirm the trial court's decisions regarding these matters.

## Appellant's Post-Trial Motion

The sole justification put forth by Wife in her post-trial motion was her mental state at the time she entered into the divorce decree. Yet, in her brief, Wife argues that an abuse of discretion exists in the chancery court's initial decision regarding the award of alimony and property settlement which, according to Wife, taints the subsequent decision to deny a motion for a new trial or to alter or amend a judgment. Wife also points out that a letter was sent to Husband's counsel in February of 2002 by her treating physician notifying Husband of Wife's delicate mental state.

Dr. Caperton began seeing Wife as a patient on September 6, 2001, shortly after Husband filed for divorce, and spoke with Wife five other times, with the last visit occurring on October 11, 2002. Wife's attorney at the time referred her to Dr. Caperton to discuss her depression. Dr. Caperton stated that she gleaned from their conversations that Wife suffered from depression related to her daughter's death and the breakup of her marriage. During their visit on October 11, 2002, Wife related to Dr. Caperton that she had signed the agreement on September 17, 2002, without fully understanding what she was doing. Dr. Caperton stated that, in October of 2002, Wife's mental condition was "horrible" and that she would have advised against Wife making any major decisions during this period of time. Originally, Dr. Caperton admitted she was skeptical of Wife's story, but she stated that after speaking with Wife's attorney she came to believe Wife's version of events.

Conversely, Mr. Cary's deposition testimony revealed a different set of circumstances on the day Wife signed the agreement. Mr. Cary began representing Wife in this matter in May of 2002, and he was present during the negotiations on September 17, 2002. According to Mr. Cary, the meeting lasted seven hours and he described Wife's demeanor as follows:

> A. We started off in this conference room on the second floor of my building with Ms. Ann Turner Moore, her client Mr. Parchman, myself, and Ms. Parchman. They were on one side of the table and we were on the other. We stayed up here several hours and went through a schedule of all of their marital property and assets and got them at least together to agree upon the values. Then later, when we weren't getting anywhere, we separated and Ms. Moore stayed up here with her client, and Ms. Parchman and I went down to my office. Then the attorneys would shuttle back and forth between the rooms and bring the proposals back and forth.
> Q. During your discussions with Ms. Parchman did you find her to be rational or irrational that day?

-4-

> A. On the day that the divorce was settled, she was the calmest and the most rational that I had ever observed her.
>
> Q. Do you have an opinion as to whether or not she understood things that you were discussing with her and the nature of the settlement that was ultimately reached in the case?
>
> A. Yes. She understood completely. She participated in various offers. There were certain things that she wanted that I told her she was not going to get, such as attorney fees. She said she wanted the case definitely to be over that day. She wanted to be sure that she maintained her home, that that was the most important thing to her. We went through several, several drafts, at least, I'd say, a minimum of four and probably more proposals. She was advised as to all of those. When the case was finally settled and the decree was prepared in my office that day and both attorneys and the clients signed it, she said that she wished she'd come here first, that she was satisfied. She hugged me. She hugged my secretary who did the work, and told everybody how thankful she was that it was over.

The decision as to whether to grant a motion for new trial or a motion to alter or amend a judgment rests in the sound discretion of the trial court. *Esstman v. Boyd*, 605 S.W.2d 237, 240 (Tenn. Ct. App. 1979). We will affirm a trial court's denial of a motion for a new trial unless the party seeking the motion is able to show an abuse of discretion on the part of the trial court. *Smith v. Smith*, No. E2003-02877-COA-R3-CV, 2004 Tenn. App. LEXIS 690, at *4 (Tenn. Ct. App. Oct. 25, 2004). Likewise, we must also affirm a trial court's denial of a motion to alter or amend a judgment unless the movant is able to demonstrate an abuse of discretion by the trial court. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). "A trial court abuses its discretion only when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

The Tennessee Rules of Civil Procedure governing motions for a new trial and motions to alter or amend a judgment do not provide specific grounds for granting such motions. *See* Tenn. R. Civ. P. 59.02 (2003); Tenn. R. Civ. P. 59.04 (2003). This Court has indicated that granting Rule 59 motions may be appropriate:

> (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, (3) when, for *sui generis* reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.

*Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1999) (citing *Helton v. ACS Group*, 964 F.Supp. 1175, 1182 (E.D. Tenn. 1997)), *overruled on other grounds by Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000); *see also Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001).

"They should not, however, be granted if they are simply seeking to relitigate matters that have already been adjudicated." *Bradley*, 984 S.W.2d at 933 (citing *Windsor v. A Fed. Executive Agency*, 614 F.Supp. 1255, 1264 (M.D. Tenn. 1983)).

This case does not involve a change in law during the pendency of the proceedings below, nor can we say that a clear error of law exists in the chancellor's final decree because we have an inadequate record with which to make this determination. Likewise, we cannot say that Wife's motion includes newly discovered evidence regarding her mental state. In her brief, Wife, in an attempt to thwart the argument by Husband that she knowingly and willingly signed the agreement of September 17, 2002, points to a letter sent by her psychologist to Husband's counsel in February of 2002. This letter advised Husband's counsel that Wife's mental state was questionable. This does not constitute newly discovered evidence because, like Husband, Wife was also aware of these facts at the time she entered into the agreement. Yet, Wife never raised this issue with the trial court at the time the court approved the agreement and incorporated it into the final decree. "The moving party must demonstrate that the new evidence was not known prior to or during the trial and that it could not have been ascertained by the exercise of reasonable diligence." *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). For the same reason, we cannot say that the trial court's refusal to allow a new trial or to alter or amend the judgment amounts to a manifest injustice. We also note that the trial court was able to interact with Wife and view her demeanor during the proceedings below, whereas we are left with reviewing a partial, cold record. *See Azbill v. Azbill*, 661 S.W.2d 682, 687 (Tenn. Ct. App. 1983); *Mize v. Skeen*, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971). For these reasons, we cannot find that the trial court abused its discretion in denying Wife's motion.

### Attorney's Fees

On appeal, both parties have requested that this Court award them their respective attorney's fees. Wife requests that this Court award her attorney's fees incurred incident to the divorce, including those litigation expenses incurred as a result of this appeal. "[A]ttorney's fees are only awarded if provided for by contract, statute, or a recognized ground of equity." *Austin Powder Co. v. Thompson*, No. 03A01-9607-CV-00229, 1996 Tenn. App. LEXIS 805, at *5 (Tenn. Ct. App. Dec. 16, 1996) (citing *State v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979)). In divorce cases the recovery of attorney's fees is permitted by statute, which provides that a spouse seeking enforcement of an alimony or custody award may be granted attorney's fees. Tenn. Code Ann. § 36-5-103(c) (2003).

In this case, however, Wife is not seeking to enforce the provisions in the divorce decree. Instead, she is seeking to have the entire decree declared void. The decision of whether to award attorney's fees on appeal rests solely within the discretion of this Court. Tenn. Code Ann. § 36-5-103(c) (2003); *see also Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). We are also mindful of the following:

> Our supreme court has defined the factors that should be applied when considering a request for attorney's fees incurred on appeal.

These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered.

*Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 Tenn. App. LEXIS 628, at *26–27 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962)). In light of the nature of Wife's appeal regarding the final decree, as well as our disposition of Wife's other issues, we decline Wife's request for attorney's fees.

Husband has asked this Court to award him attorney's fees pursuant to section 27-1-122 which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2003). "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (citing *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). "Thus, an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, (Tenn. Ct. App. 2003) (citations omitted); *see also Brooks v. United Unif. Co.*, 682 S.W.2d 913, 915 (Tenn. 1984). Accordingly, we deem this appeal to be frivolous. We remand this case to the chancery court for a determination of appropriate legal expenses incurred by Husband in defending this appeal.

**Conclusion**

For the foregoing reasons, we affirm the decision of the chancery court and remand for further action consistent with this opinion. Costs of this appeal are taxed against the Appellant, Brenda Parchman, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE