IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2020 Session

## SYPRISS SMITH v. ALL NATIONS CHURCH OF GOD ET AL.

**Appeal from the Circuit Court for Madison County
No. C-17-41  Donald H. Allen, Judge**

_____

### No. W2019-02184-COA-R3-CV
_____

Former employee sued her former employer for retaliatory discharge under the Tennessee Public Protection Act, disability discrimination, and religious discrimination. Former employee voluntarily dismissed the religious discrimination claim prior to trial; the jury returned a verdict in favor of the former employee on only the retaliatory discharge claim, awarding total damages of $15,500.00, inclusive of punitive damages. Former employee then sought an award of over $100,000.00 in attorney's fees under the applicable statutes, which the trial court reduced to $12,500.00, the same amount of punitive damages awarded by the jury. Former employee appeals only the attorney's fee award. We vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Robert David Martin and Thomas W. Shumate, IV, Nashville, Tennessee, for the appellant, Sypriss Smith.

Nathan Blake Pride, Jackson, Tennessee, for the appellee, All Nations Church of God d/b/a Covenant Child Care Development Center.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

On February 17, 2017, Plaintiff/Appellant Sypriss Smith ("Appellant") filed a complaint against a number of defendants, including Defendant/Appellant All Nations

Church of God ("All Nations," and together with the individual defendants, "Defendants").[1] Therein, Appellant alleged that she had been employed by All Nations in the daycare center that it operated. On or about June 9, 2016, however, All Nations terminated Appellant's employment. Appellant alleged that the termination was illegal and set forth three separate theories in support thereof: (1) disability discrimination based on the necessity that Appellant receive allergy shots during the work week; (2) retaliation for Appellant's action in reporting other workers in the daycare for child abuse; and (3) discrimination based on Appellant's refusal to attend All Nations church services. According to Appellant, these allegations resulted in three separate claims: (1) a violation of the Tennessee Public Protection Act ("TPPA"), for retaliation against a whistleblower; (2) a violation of the Americans with Disabilities Act and the Tennessee Disability Act ("TDA"); and (3) a violation of the Civil Rights Act and the Tennessee Human Rights Act ("THRA") due to religious discrimination.

Appellant alleged that she was unable to find alternative employment and that she suffered extreme stress, pain, suffering, and humiliation as a result of the termination of her employment. For these injuries, Appellant requested back pay, front pay, and other compensatory damages "in an amount not less than $100,000.00"; punitive damages "in an amount not less than $500,000.00"; a permanent injunction; and pre- and post-judgment interest, costs, and reasonable attorney's fees.

On March 20, 2017, Defendants answered the complaint, denying the material allegations contained therein. Generally, the answer denied that Appellant's employment was terminated for any unlawful reason.

Appellant next asked for leave to amend her complaint to state that the Equal Employment Opportunity Commission ("EEOC") had issued her a "right to sue" letter with regard to her disability and religious discrimination claims. The subject letter was attached to Appellant's motion. All Nations responded in opposition to Appellant's request, arguing that the EEOC did not grant Appellant a "right to sue" letter. Rather, Defendants alleged that the EEOC found no "cause upon which [Appellant] could rely upon [] as a basis for a lawsuit." Thus, All Nations argued that Appellant should not be permitted to amend her complaint.

Appellant responded, arguing that All Nations' contention that she was not awarded a "right to sue" letter was baseless, as the letter was attached to her motion. Relevant to this case, Appellant also asserted that she could "only speculate that Defendants are attempting to drive up costs by forcing [Appellant's] counsel to drive two hours, each way, to attend a routine hearing on a motion that the Defendants do not have a good faith basis for opposing." Appellant therefore gave notice of her intention to file Rule 11 sanctions

---

[1] Appellant also sued a number of individuals affiliated with All Nations. As noted *infra*, these individuals were later voluntarily dismissed.

should the response to the motion to amend "not be withdrawn." On May 26, 2017, the parties entered into an agreed order that the motion to amend the complaint be granted. The amended complaint was then filed and Defendants answered, again denying the material allegations contained therein.

On June 26, 2017, Appellant filed a notice of voluntary nonsuit as to all of the individual defendants, leaving only All Nations as a defendant. The trial court entered an order confirming the voluntary dismissal on June 29, 2017.

The parties thereafter entered into a period of discovery. All Nations requested additional time to respond on July 20, 2017, on the basis of the "complexity" of the files requested. All Nations also was required to amend its admissions when it inadvertently admitted one request that it intended to deny.

In January 2018, Appellant requested a continuance of the trial scheduled for May 2018. Therein, Appellant admitted that counsel was not present for a docket call when the case was set for trial, but alleged that no notice was provided of the docket call. Appellant further noted that discovery was ongoing and no depositions had yet been taken. All Nations responded that it was present for the docket call and that the trial could take place as scheduled, despite discovery still taking place. According to All Nations, the only outstanding discovery was due from Appellant. In February 2018, the trial court entered a scheduling order setting dates for the completion of discovery, depositions, expert disclosures, and dispositive motions. A trial was set for October 16, 2018.

Each party thereafter scheduled depositions of the other parties' witnesses. On October 14, 2018, Appellant filed a motion to exclude a witness because she had not been previously disclosed by All Nations. This witness was first disclosed on October 1, 2018, approximately two weeks prior to trial. All Nations responded in opposition on October 10, 2018. Therein, All Nations stated that it had no objection to a continuance being granted to allow Appellant to depose the witness. All Nations disclosed two additional witnesses on October 11, 2018. It also appears that Appellant at some point disclosed her own "surprise" witness. The trial court thereafter entered an order allowing discovery to be re-opened and resetting the trial date for January 30, 2019. The order further required that the parties participate in mediation prior to trial. The parties later filed a joint motion to continue the trial for a third time. The trial court ordered mediation to take place by March 30, 2019, and for trial to take place on July 9, 2019.

On March 27, 2019, Appellant filed a motion for an extension of the time period for holding mediation and for relief from the costs of mediation. Therein, Appellant alleged that although mediation was both ordered and scheduled, All Nations refused to participate in mediation. As such, Appellant was required to pay a $250.00 cancellation fee and asked to be reimbursed those funds and all attorney's fees incurred, as well as for a short extension on the time to mediate.

All Nations did not deny that it refused to participate in mediation, but attempted to assert that its action was in good faith. In particular, All Nations responded that "unfortunately, [All Nations was] brutally honest in [its] belief[], that perhaps that time, that Mediation may not be helpful" and that to mediate the case "would be an admission of falsehood and a lie." All Nations indicated that although counsel prepared for mediation, All Nations' pastor refused to participate, as he "did not feel in his heart, that would be in his best interest." All Nations further contended that it acted in good faith by informing Appellant of its intent not to mediate. All Nations therefore asked that mediation be reset, but denied that Appellant should receive any reimbursement.

The trial court entered an order requiring the parties to mediate the case and put forth a good faith effort at resolution no later than May 15, 2019. All Nations was to be solely responsible for the fees associated with the prior cancellation. The trial court, however, held Appellant's request for attorney's fees in abeyance. Unsurprisingly, no settlement was reached at mediation.

On July 1, 2019, Appellant filed two motions in limine to exclude portions of one witness's testimony, as well as certain statements by All Nations counsel. Appellant also filed a motion in limine to be allowed to distribute a juror questionnaire during voir dire. On July 3, 2019, All Nations filed two motions in limine of its own, one seeking to limit the testimony of one of Appellant's witnesses and one seeking to exclude a letter related to Appellant's alleged allergy diagnosis. Appellant responded in opposition to All Nations' motions in limine, asserting that objections should be dealt with on a "statement-by-statement basis[,]" and that the subject letter was admissible because claims under the TDA do not require the support of expert proof. The trial court apparently did not enter any written order ruling on the pending motions in limine pre-trial.

At some point, Appellant voluntarily dismissed her claim under the THRA.[2] The trial was eventually held on July 23 and 24, 2019 on Appellant's claims under the TPPA and the TDA. Following the proof, the jury returned a verdict in favor of Appellant as to her TPPA claim and awarded her $2,500.00 for lost wages, $500.00 in emotional damages, and $15,500.00 in punitive damages.[3] The jury did not return a verdict in Appellant's favor as to the remaining claim under the TDA. The trial court entered a judgment in this amount on August 1, 2019, which judgment reserved requests for attorney's fees and costs.

On August 23, 2019, Appellant filed a motion for attorney's fees and costs. Therein, Appellant alleged that she was entitled to attorney's fees as the prevailing party under the

_____

[2] There is no order to this effect in the record, nor is there a transcript of the trial. Rather, this fact was mentioned in the trial court's order granting, in part, Appellant's request for attorney's fees. It does not appear to be disputed.

[3] The jury form is not included in the record, but these figures are not in dispute.

- 4 -

TPPA, and that she had incurred $107,756.91 in attorney's fees, court costs of $497.50, and discretionary costs of $2,870.00. Appellant also requested both pre- and post-judgment interest. Appellant filed a memorandum in support of the motion, as well as a letter sent to All Nations during the proceedings warning of the high amount of attorney's fees, detailed time sheets showing the work performed by Appellant's counsel on the matter, a declaration from Appellant's lead counsel, a 2013 fee survey showing the fees charged to be in line with both the Nashville and Memphis areas, and declarations from two unaffiliated attorneys as to the reasonableness of the fees in relation to both a TPPA claim and compared to other attorneys in the Middle Tennessee area.

On September 11, 2019, All Nations filed a motion to pay the $15,500.00 judgment into the court. Appellant opposed the payment because the court had yet to rule on the pending motions for attorney's fees. Eventually, the judgment was paid to Appellant, though apparently under protest.  On September 18, 2019, All Nations responded in opposition to Appellant's attorney's fees request, characterizing the amount as excessive, not reflective of the TPPA claim alone, and unreasonable. All Nations agreed to the payment of court costs and discretionary fees, argued that $10,000.00 in attorney's fees was reasonable, and denied that interest should be awarded.

Of course, Appellant responded to All Nations' opposition, asserting that the fees were statutorily required, that they were an accurate reflection of the work required to prevail on the TPPA claim, and that Appellant and her counsel should not be deprived of their full attorney's fees simply because Appellant was a low wage worker entitled to only a small amount of compensation. For this argument, Appellant likened her TPPA claim to a civil rights action. Additionally, Appellant argued that All Nations failed to consider all of the factors for determining reasonable attorney's fees under the Rules of the Tennessee Supreme Court.

The attorney's fees dispute was heard on September 20, 2019. Therein, Appellant argued that the fees were reasonable given the two years of litigation, the two-day trial, and All Nations sometimes contumacious conduct, particularly with regard to mediation. The trial court pointed out, however, that some of the delays were attributable to Appellant. All Nations argued that the hourly fees charged by Appellant's counsel were not in line with the fees of Madison County; Appellant pointed out that All Nations provided no proof whatsoever of the customary fees charged in the locality. In the end, the trial court focused heavily on the fact that that Appellant was awarded a mere $15,500.00 in damages, after having requested $600,000.00 in damages in her complaint. The trial court also stated that the jury rejected Appellant's TDA claim; Appellant argued that the jury could not legally find in favor of Appellant on both her TPPA claim and her TDA claim, as under the TPPA, the retaliation must be the sole reason for the termination of employment.

In any event, the trial court entered an order on November 13, 2019, awarding Appellant only a portion of the requested attorney's fees. Specifically, the trial court's order

stated as follows:

> The Plaintiff requests attorneys' fees and expenses of $107,756.91. The Court finds this amount to be excessive because of the amount of damages awarded by the jury and because the jury did not find in favor of Plaintiff on her alternative claim for relief under the Tennessee Disability Act, and Plaintiff voluntarily dismissed her alternative claim under the Tennessee Human Rights Act prior to trial. Additionally, the Court finds that the hourly rate charged by the Plaintiff's attorneys is not in line with the hourly rates of attorneys in Jackson, Tennessee. The Court finds that $12,500, the amount the jury awarded as punitive damages, to be a reasonable award of attorneys' fees. As such, the Court awards the Plaintiff $12,500 in attorneys' fees, $497.50 in court costs, and $2,870 in discretionary costs.
>
> The Court denies the Plaintiff's request for pre-judgment interest. The Court finds that the trial could have favored either party, so pre-judgment interest is not appropriate.

From this order, Appellant appeals.

### ISSUES PRESENTED

Appellant raises several issues in her appellate brief.[4] As we perceive it, there are

---

[4] Specifically, Appellant frames her issues as follows:

> 1. The Tennessee Public Protection Act ("TPPA") provides that a successful plaintiff must be awarded her reasonable attorney's fees. After two years of discovery, seven depositions, three trial continuances, two attempts at mediation, and a two-day trial in which the jury found for the plaintiff, Ms. Smith, and awarded her compensatory and punitive damages, Ms. Smith requested approximately $107,000 in attorney's fees and expenses. Are these fees and expenses reasonable?
> 2. In support of her attorney's fee request, Ms. Smith submitted a detailed accounting of hours worked on the case by each attorney and paralegal who contributed to the successful verdict, two affidavits of other employment lawyers attesting to the reasonableness of their hourly rates and time spent on the case, and a fee survey showing comparable rates in the region. The Defendants produced no countervailing evidence or affidavits. Yet the trial court reduced Ms. Smith's attorney's fees by approximately 88.31% to $12,500, for an effective hourly rate of only $35 per hour. Was this an abuse of discretion?
> 3. In reducing the attorney's fees award by over $94,000, the trial court held that $12,500 was a reasonable attorney's fee because it was proportional to the punitive damages awarded by the Jury. Was this an abuse of discretion?
> 4. Because of the Trial Court's reduction in attorney's fees by over $94,000, Ms. Smith's attorneys have had to expend additional time and effort on this appeal. Should the Plaintiff's attorneys be awarded their attorney's fees and costs incurred in pursuing this

two issues in this appeal:

1. Whether the trial court abused its discretion in awarding Appellant only $12,500.00 in attorney's fees.
2. Whether Appellant should be awarded attorney's fees incurred in this appeal.

## DISCUSSION
## I.

Under the American Rule, litigants in our courts typically bear the cost of their own attorney's fees unless fee shifting is permitted by contract or statute, or some recognized exception to the rule applies. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). In this case, Appellant prevailed in her claim that her employment was terminated for her refusal to remain silent about illegal activities under the TPPA. The TPPA provides that "[a]ny employee terminated in violation of subsection (b) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for the actions shall be entitled to recover reasonable attorney fees and costs." Tenn. Code Ann. § 50-1-304(c)(2). As such, there is no dispute in this appeal that Appellant was entitled to reasonable attorney's fees incurred in prosecuting her action.

When reasonable attorney's fees are permitted by statute, however, the trial court generally has considerable discretion in fixing the amount of the fees awarded. *See Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002) ("[A] determination of reasonable attorney's fees and costs is necessarily a discretionary inquiry."). As we have explained,

> There is no fixed mathematical rule in this jurisdiction for determining reasonable fees and costs. This being the case, an appellate court will normally defer to a trial court's award of attorney's fees unless there is "a showing of an abuse of [the trial court's] discretion." *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987)[.]

*Id.* (one citation omitted); *see also Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005) (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)) ("The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.").

The Tennessee Supreme Court has also provided guidance for courts in determining

appeal?

As is evident from the above, Appellant assigns no error to the trial court's decision to deny both pre- and post-judgment interest.

reasonable fees:

> The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a). Where attorney's fees are at issue, the Tennessee Supreme Court has explained the appropriate procedure to be followed by the trial court:

> In terms of procedure, the trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that depends upon the particular circumstances of the individual case. To enable appellate review, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination of a reasonable fee in a given case.

***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 185–86 (Tenn. 2011) (internal quotation marks, alterations, and citations omitted). When the trial court's order provides no indication that it considered the reasonableness of the fee or any of the RPC factors, the appropriate remedy is to vacate and remand for the trial court to make an express determination as to the reasonableness of the fees. *See, e.g.*, ***Ferguson Harbour Inc. v. Flash Mkt., Inc.***, 124 S.W.3d 541, 552–53 (Tenn. Ct. App. 2003) (remanding fee award for reconsideration where the trial court made "no specific findings as to the factors which justify this amount in fees"); ***Southwind Residential Properties Ass'n, Inc. v. Ford***, No. W2016-01169-COA-R3-CV, 2017 WL 991108, at *13 (Tenn. Ct. App. Mar. 14, 2017) (remanding where "the trial court's ruling makes no mention of many of the factors outlined under Rule 1.5" and "neither the trial court's oral ruling, nor its written order, contains any finding that the award is reasonable under the circumstances").

There can be no dispute that the trial court considered at least some of the factors contained in RPC 1.5. Still, Appellant argues that the trial court erred in failing to consider all of the above factors. According to Appellant, the trial court gave only minimal consideration to three factors (1, 3, and 8), focused nearly exclusively on a single factor (4), and ignored the remaining factors.

We begin with consideration of the factors that the trial court allegedly ignored. Even to the extent that we agree with Appellant that consideration of all the factors would have been helpful in this particular case,[5] we cannot find fault in the trial court's failure to consider many of the above factors. For example, although it appears undisputed that Appellant's fee agreement was in writing, *see* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(10), Appellant does not address this factor in any fashion in her appellate brief. The same is true of any consideration of whether the fee was advertised. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(9). These omissions appear to result from Appellant's failure to cite to the current version of Rule 1.5, rather than caselaw quoting a prior version of the rule from nearly two decades ago. Still, we concede that these factors may have less relevance in a case in which a party is seeking payment of his or her attorney's fees from the opposing party rather than seeking to resist the attorney's fees charged by his or her own counsel.

Appellant does assert, however, that other factors not considered by the trial court favor a larger award in this case. In particular, Appellant asserts that factor two, regarding the likelihood that the acceptance of the employment would preclude other work by the lawyer, and factor five, regarding the time limitations imposed by the client, are in her favor. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(2) & (5). In support, Appellant alleged that the case required the attorneys "to dedicate nearly all of their work hours" to preparation and that the matter took away from other work. First, we note that no proof was presented that there were any time limitations imposed by the situation or the circumstances. For example, this is not a case where an attorney was required "to 'drop everything else' and immediately become involved in a representation shortly before a scheduled hearing or on the eve of a closing or similar legal undertaking[.]" ***Lowe v. Johnson Cty.***, No. 03A01-9309-CH-00321, 1995 WL 306166, at *3 (Tenn. Ct. App. May 19, 1995) (holding that such facts "can dictate . . . that a larger than normal fee is required in order to satisfy the standard of reasonableness" with regard to this factor). Likewise, we cannot conclude that proof was presented to show that this case precluded other employment. While it is true that upon the eve of trial, much work was devoted to Appellant's case, as Appellant repeatedly states, this case was pending for two years. The time sheets submitted clearly indicate that Appellant's case did not require full devotion during this entire period. Instead, it appears that this case was a rather typical contingency fee case that allowed Appellant's attorneys

---

[5] We note that the Tennessee Supreme Court has specifically rejected use of a "lodestar" approach to determining the reasonableness of fees in which only the hourly rate and the reasonable time expended are necessary to determine the fee. Instead, the court held that all the factors should be given weight. *See* ***Wright***, 337 S.W.3d at 180.

to work on other matters during its pendency. Nor is this a case in which counsel chose to represent an unpopular client and "thereby foregoes an opportunity to attract other clients because of the unpopular client." *Id.* Given the dearth of proof presented on these factors and the fact that the proof in the record does not support Appellant's arguments, we cannot conclude that the trial court erred in making no express findings as to these factors.

Appellant also takes issue with the trial court's failure to consider factor six relating to the length of the professional relationship between the client and the attorney. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(6). Appellant insists that the short-term relationship between herself and her counsel militates in favor of a higher fee. *See Lowe v. Johnson Cty.*, No. 03A01-9309-CH-00321, 1995 WL 306166, at *3 (Tenn. Ct. App. May 19, 1995) ("A preexisting, ongoing professional relationship, such as a retainer relationship between a business and an attorney or a relationship between an insurance company and its regular defense counsel, can militate, in some circumstances, for a lesser fee than would be reasonable for a one-time representation for the same legal work.") (footnote omitted). We cannot, however, agree that the trial court did not consider this factor. Although not included in the trial court's written order, the trial court's oral ruling indicates that it did not rule on this factor because neither party put on proof about the relationship between the parties.[6] While oral rulings that are not incorporated into a trial court's written order are generally not part of the trial court's official ruling, *see Steppach v. Thomas*, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011), we simply cannot ignore this oral statement to conclude that the trial court in fact improperly failed to consider this factor. Thus, taking into account the trial court's oral ruling, we cannot conclude that the trial court improperly ignored this factor. Given that no proof was presented on this issue, we can find no error in the trial court's determination that this factor favored neither party's argument.

Appellant also asserts that the trial court's failure to properly consider factor seven, regarding the experience of the attorneys, *see* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(7), negatively affected a factor that the trial court did consider, the hourly rate charged in the locality. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(3). At the hearing on Appellant's fee request, All Nations asserted that the rates charged by Appellant's counsel were excessive compared to the rates charged by Jackson, Tennessee attorneys. Rather than the $275.00 per hour that Appellant's lead counsel charged for both in-court and out-of-court time, All Nations asserted that a rate of $150.00 per hour for in-court time and $100.00 per hour for out-of-court time was reasonable. The problem with this assertion is that All Nations presented no proof whatsoever to support this assertion. And statements of counsel are simply not evidence. *Dayhoff v. Cathey*, No. W2011-02498-COA-R3-JV, 2012 WL 5378090, at *2 (Tenn. Ct. App. Nov. 1, 2012) (citing *Metro. Gov't of Nashville & Davidson Co. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977)).

---

[6] Specifically, the trial court stated that "I can't really comment on the time and length of the relationship between the clients and the attorneys." This was the only mention of the length of the professional relationship at the hearing.

We agree that some cases have suggested that in the absence of countervailing proof as to the fees customarily charged in the locality, a claim that the fee is excessive on this basis should not prevail. *See* **Crihfield v. Crihfield**, No. 02A01-9103CV00020, 1991 WL 222224, at *3 (Tenn. Ct. App. Nov. 4, 1991) ("The husband argues that the $200 per hour charged by the wife's lead counsel exceeds the customary fee charged by counsel in Lauderdale County. There is no evidence in the record, however, to indicate what the customary fee is in Lauderdale County."); **Keith v. Howerton**, 165 S.W.3d 248, 253 (Tenn. Ct. App. 2004) (reversing the trial court due, in part, to the fact that "defendants introduced no countervailing evidence to show the requested fees were unreasonable"). Other authorities suggest, however, that the trial court may call upon its own judgment and expertise in determining a proper rate in the locality. *Cf.* **Connors v. Connors**, 594 S.W.2d 672, 677 (Tenn. 1980) ("[T]his Court is not bound either by the expert opinion of lawyers as to the value of professional services or the action of the lower courts when in our judgment the fees allowed are excessive or inequitable."); *see also District Court Procedures Appellate Review*, SNETLSAF § 5.12 ("In determining the prevailing market rate in the community, the district court may draw upon its own expertise. Although this is a relevant consideration, most courts stress that the governing rates should also be supported by record evidence."). Indeed, Appellant, relying on federal caselaw, concedes in her brief that trial courts may rely on their "own knowledge and experience in handling similar fee requests." **Van Horn v. Nationwide Prop. & Cas. Ins. Co.**, 436 F. App'x 496, 499 (6th Cir. 2011); *see also* **Wright**, 337 S.W.3d at 180–81 ("Regardless of the approach used, the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and *the experience of the trier of facts*, and the reasonableness of the fee must depend upon the particular circumstances of the individual case.") (emphasis added) (internal citations and quotation marks omitted).

Even assuming that the trial court was permitted to determine the appropriate hourly rate in the locality in the absence of proof, however, the trial court in this case failed to actually do that in a way that affords meaningful appellate review. As previously discussed, the trial court made a specific finding that the hourly rates charged by Appellant's counsel were not in line with the rates of the locality. The trial court did not, however, provide any detail to illuminate its reasoning for reaching this result.

For example, the trial court did not discuss the experience of Appellant's counsel. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(7) (directing the trial court to consider the experience and reputation of the attorney requesting the fee). Appellant asserts that the affidavits she provided indicate that these rates were appropriate given the experience of her counsel. On the other hand, however, Appellant's lead counsel was a relatively recent law school graduate who lauded his educational, rather than his trial, experience. And there was little to no proof presented as to the reputations of Appellant's attorneys. The trial court gave no indication that it considered these facts or that these factors favored one party's position. The trial court also did not indicate whether Appellant could have retained competent counsel in her local area to represent her. *Cf.* **Crihfield**, 1991 WL 222224, at *3 ("[I]n a

- 11 -

case such as this where the parties live in a rural area such as Lauderdale County, the possibility exists that one of the parties may need to go to the nearest major city to find disinterested or competent counsel. In light of these factors, we find that the trial court did not abuse its discretion in allowing the plaintiff an attorney's fee based on the $200 per hour rate charged by her lead counsel."). This consideration appears to be quite relevant in this case, as at least one of the declarations filed by an independent lawyer in support of the attorney's fees request indicated that the case was "undesirab[le]" due to the high burden of proof required of TPPA actions and that he would not have accepted this case due to that issue.

Far more importantly, however, the trial court did not indicate what it believed to be the proper market rate for the representation in this case. The trial court's failure to provide this Court with any indication of the market rate of the locality hinders our appellate review, as we have no way to evaluate how the trial court reached the figure it chose for the ultimate award of attorney's fees. If All Nations had provided some support for its assertion of the proper rate in the locality, perhaps we could "fill in the blanks" to exercise appropriate appellate review and afford the trial court appropriate deference. In this case, however, there was no proof presented of the appropriate rate in the locality and no determination by the trial court of the appropriate rate. Thus, in order to review this case, we would simply be guessing at how the trial court reached its decision. Applying the necessary presumption of correctness based on mere assumptions and guesswork is simply not appropriate. *Cf.* ***Hadjopoulos v. Sponcia***, No. E2015-00793-COA-R3-CV, 2016 WL 1728250, at *4 (Tenn. Ct. App. Apr. 28, 2016) ("[W]e are left to guess or assume in order to conduct appellate review. We decline to do so."); ***Friendship Water Co. v. City of Friendship***, No. W2019-02039-COA-R9-CV, 2020 WL 4919796, at *4 (Tenn. Ct. App. Aug. 21, 2020) ("As it is, the trial court's order does not provide a satisfactory explanation as to why the court concluded that the parties' contract was legally valid. Accordingly, this largely leaves this Court in an untenable position to speculate."). Nor does an order that requires us to guess as to the reasoning employed comply with the Tennessee Supreme Court's guidance in this area. *See* ***Wright***, 337 S.W.3d at 185–86.

Given the trial court's heavy reliance on this factor, without some indication of the hourly rate that should be applied, or at least an approximation of the amount of hours that were necessary to prosecute Appellant's claims,[7] the ultimate award chosen by the trial court appears no more than an arbitrary reduction to reflect the amount of punitive damages awarded.[8] A decision that is arbitrary may constitute an abuse of discretion. *See* ***Carothers***

---

[7] The trial court did indicate that case was simple, but it did not state how many hours were necessary to prosecute it. We assume, however, that the trial court did reduce the hours incurred substantially, as leaving the time entries intact results in Appellant's attorney's receiving an hourly fee of approximately $35.00 per hour, which is far less than even the lower limit argued by All Nations. In order to avoid this absurdity, we must therefore assume that the trial court found both the hourly amount and the time expended excessive, although the trial court's order certainly does not clearly express such a finding.

[8] That is not to say, however, that these are the only factors that should be considered. *See* ***Wright***,

- 12 -

***v. Giles Cty.***, 162 Tenn. 492, 39 S.W.2d 584, 586 (Tenn. 1931) (quoting ***Scott v. Marley***, 124 Tenn. 388, 137 S.W. 492, 493 (Tenn. 1911)) ("In the first place, the discretion which is conferred on the judge is a judicial discretion, and is not an arbitrary, vague, or fanciful discretion, but is a legal and regular power or discretion, the abuse of which by the judge is subject to review by writ of error or by appeal."); ***Martin v. Franklin Cool Springs Corp.***, No. M2014-01804-COA-R3-CV, 2015 WL 7062124, at *4 (Tenn. Ct. App. Nov. 10, 2015) (citing ***Brown v. Shappley***, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008) ("An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable."). Other courts have applied this rule when the trial court arbitrarily reduces a requested fee. *See* ***Hansen v. Moore***, No. G025047, 2002 WL 1019078, at *4 (Cal. Ct. App. May 21, 2002) (holding that the trial court abused its discretion in arbitrarily reducing the amount of attorney's fees requested). *But see* ***Elgohary v. Lakes on Eldridge N. Cmty. Ass'n, Inc.***, No. 01-14-00216-CV, 2016 WL 4374918, at *13 (Tex. App. Aug. 16, 2016) (affirming the amount of attorney's fees awarded even after the trial court characterized its own reduction as "completely arbitrary"). In fact, this Court has previously held that a trial court abused its discretion when it reduced the hours incurred by an attorney without "point[ing] out which of the hours on the detailed bills before him were out-of-line" or explaining "how many hours would have been reasonable under the circumstances of this suit." ***Lowe***, 1995 WL 306166, at *5. This failure along with others resulted in the trial court's decision being reversed. ***Id.*** at *5–6.

All Nations contends, however, that the reduction was not arbitrary, relying on its unsupported argument that the fees charged by Appellant's counsel were out-of-line with the locality, the trial court's finding that the case was simple, and their contention that the other factors considered by the court support the reduction. But Appellant denies that the trial court was correct in its consideration of these factors.

For example, Appellant asserts that in finding that the case was simple, the trial court failed to consider the high burden of proof necessary in TPPA claims, as well as the affidavit of disinterested attorneys that, given the nature of TPPA claims, the requested amount of attorney's fees was reasonable. *See* Tenn. R. Sup Ct. 8, RPC 1.5(a)(1) (involving the difficulty of the questions involved in the case, the skill required, and the time and labor required). Indeed, one of the independent declarations filed in support of the attorney's fees request indicated that due to the high burden, a TPPA claim is undesirable. Appellant further contends that the trial court's basis for its finding that the case was simple is erroneous. The transcript from the fee request hearing indeed reflects the trial court's statement that "this was a simple case where the church didn't believe she was performing the job. They let her go." We agree with Appellant that this finding is plainly contrary to the jury's finding that Appellant's employment was not terminated due to poor performance, but due to her refusal to be silent about illegal activities under the TPPA.

---

337 S.W.3d at 180 (rejecting such an approach).

- 13 -

Moreover, Appellant asserts that the trial court failed to fully consider the amount of time that was expended due to All Nations' contumacious conduct in refusing to participate in the mediation ordered by the trial court. The time sheets do indicate that a fairly large amount of time was expended to prepare for the mediation.[9] All Nations, however, unreasonably refused to participate in the mediation, requiring Appellant to expend more time and effort in preparation. The trial court specifically reserved the award of attorney's fees related to the mediation. At the final hearing on the motion for attorney's fees, however, the trial court suggested that it had already awarded attorney's fees related to the mediation and was corrected by Appellant. Nevertheless, the ultimate award of attorney's fees fails to mention if or how this conduct on the part of All Nations factored into the trial court's determination of the appropriate fees in this case.

Appellant further contends that the trial court failed to give proper weight to the fact that this case was taken on a contingency basis, which factor often supports a higher attorney's fees award. *See* Tenn. R. Sup Ct. 8, RPC 1.5(a)(8) (directing the court to consider whether the fee was fixed or contingent); *United Med. Corp. of Tennessee v. Hohenwald Bank & Tr. Co.*, 703 S.W.2d 133, 136 (Tenn. 1986) ("An attorney's fee should be greater where it is contingent than where it is fixed."). Although this fact was discussed during the hearing on Appellant's fee request, the trial court's ruling does not indicate that it actually considered this fact in reducing the fee awarded to Appellant.

Most importantly, Appellant contends that the trial court focused too narrowly on the amount involved and results reached in this case. *See* Tenn. R. Sup Ct. 8, RPC 1.5(a)(4). According to Appellant, this focus amounts to a proportionality requirement that is at odds with the nature of a TPPA claim. In support of this argument, Appellant asserts that her claim under the TPPA should be likened to other claims in which proportionality is not the deciding factor. In the seminal case on this issue, the United States Supreme Court opined:

> A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988 . . . because . . . the private market for legal services fail[s] to provide many victims of civil rights violations with effective access to the judicial process. . . . These victims ordinarily cannot afford to purchase legal services at the rates set by the private market.
>
> *   *   *
>
> Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial

---

[9] The time sheets indicate that Appellant was billed nearly $4,000.00 for work performed in preparation for the first mediation. This represents more than 30% of the fees ultimately awarded by the trial court.

expenditures of time and effort but produce only small monetary recoveries.

\* \* \*

A rule of proportionality would make it difficult, if not impossible for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. . . . Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*City of Riverside v. Rivera*, 477 U.S. 561, 576–78, 106 S. Ct. 2686, 2688, 91 L. Ed. 2d 466 (1986). The Sixth Circuit later applied this rule to award a plaintiff 100% of her requested fees under the Individuals with Disabilities Education Act, although the plaintiff only prevailed on 25% of her claims. *See **Phelan v. Bell***, 8 F.3d 369, 374 (6th Cir. 1993). And because the Tennessee Consumer Protection Act is to be liberally construed in favor of protecting consumers, we applied the same rule against mandatory proportionality to claims under that statute. *See **Keith v. Howerton***, 165 S.W.3d 248, 253 (Tenn. Ct. App. 2004) (holding that in consumer protection actions, "the rule of proportionality would make it difficult, if not impossible, for individuals with meritorious claims but relatively small potential of damages to obtain redress from the courts without the attorneys for such parties to be reasonably compensated for their legal services in obtaining the relief sought"). Thus, "[w]hen a plaintiff prevails in either a civil rights or consumer protection claim, his counsel will ordinarily be entitled to full compensation for time and effort expended in the representation." *Id.* (citing ***Hensley v. Eckerhart***, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Under this rule, Appellant contends that she should likewise be entitled to all of her attorney's fees, despite ultimately prevailing on only one of the three theories raised in her complaint.

All Nations asserts that the trial court's failure to specifically address this argument is irrelevant, as it contends that this rule is entirely inapplicable where Appellant's claim lies under the TPPA rather than a civil rights or consumer protection statute. Moreover, All Nations asserts that even if applicable, *City of Riverside* and its progeny merely reject a requirement of proportionality between judgments and attorney's fees awards; according to All Nations, the cases do not hold that any fee award in which the trial court considered proportionality "is de facto erroneous." *See **City of Riverside***, 477 U.S. at 574 ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.") (citation omitted); *cf. **Lowe***, 1995 WL 306166, at \*1 (awarding plaintiff only a portion of her requested fees related to a THRA claim). All

Nations asserts that because proportionality was only one among the many factors that the trial court considered, its ruling was not an abuse of discretion.

Appellant concedes that no Tennessee court has held that the rule prohibiting mandatory proportionality applicable in civil rights and consumer protection claims should also apply to claims under the TPPA. *But see **Maestas v. Town of Taos***, 2020-NMCA-027, ¶ 23, 464 P.3d 1056, 1063, *cert. granted* (Apr. 27, 2020) (holding that proportionality should be the deciding factor in determining attorney's fees in a whisteblower action). However, she argues that because TPPA claims serve to protect the same interests as claims under civil rights or consumer protection acts, the same rule should apply under the TPPA. It is true that Tennessee courts have applied the rule against mandatory proportionality to a number of statutes intended to protect the rights of others. [10]

Moreover, Appellant argues that proportionality is inappropriate in this particular case for two reasons. First, Appellant contends that it is error to hold her failure to prevail on her TDA claim is a bar to her total attorney's fees because her TDA claim was necessarily alternative to her claim under the TPPA. In other words, due to the "sole cause" standard under the TPPA, the jury could not have legally also found that she was terminated as result of a disability as, prohibited by the TDA. *See **Williams v. City of Burns***, 465 S.W.3d 96, 110 (Tenn. 2015) ("[T]he TPPA requires the plaintiff to prove that retaliation for the protected conduct was the sole reason [for the termination of employment].").

---

[10] Appellant asserts that this Court held in ***Whitney v. First Call Ambulance Service, et al.***, No. M2018-01155-COA-R3-CV, 2019 WL 2026495 (Tenn. Ct. App. May 8, 2019), that the elements of a TPPA claim and THRA claim are "nearly identical." The ***Whitney*** opinion does not state this. Rather, we characterized the elements of a THRA claim as

> (1) membership in a protected class; (2) racially motivated conduct that constituted an unreasonably abusive or offensive work-related environment or which adversely affected the reasonable employee's ability to do his or her job; (3) the employer knew or should have known of the harassment; and (4) the employer failed to respond with prompt and appropriate corrective action.

*Id.* at *3. In contrast, we described the elements of a TPPA claim as requiring the plaintiff prove "(1) his status as an employee; (2) his refusal to participate in, or remain silent about, illegal activities; (3) the employer's discharge of the employee; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination by the employer." *Id.* at *4. A prior version of that case that was later vacated on rehearing did state that THRA claims and claims under Title VII of the Civil Rights Act of 1964 were "virtually identical." ***Whitney v. First Call Ambulance Serv.***, No. M2018-01155-COA-R3-CV, 2019 WL 1594929, at *2 (Tenn. Ct. App. Apr. 15, 2019), *opinion vacated on reh'g*, No. M2018-01155-COA-R3-CV, 2019 WL 2053526 (Tenn. Ct. App. May 6, 2019), *and superseded sub nom. Whitney v. First Call Ambulance Service, et al.*, No. M2018-01155-COA-R3-CV, 2019 WL 2026495 (Tenn. Ct. App. May 8, 2019). Obviously, a comparison to the federal civil rights statute does not equate to a statement that the THRA and the TPPA are also nearly identical.

Moreover, Appellant contends that the majority of the work performed in this case on the competing claims cannot be extricated. Appellant contends that this situation is akin to that faced by the panel in ***Lowe v. Johnson City***, which rejected such apportionment:

> The defendants urge us to take into account that the plaintiff was unsuccessful on her discrimination and harassment claims. The plaintiff's three claims were based on a common core of facts. In order to demonstrate her theory as to retaliation, it was necessary to place before the jury the operative facts-what others did to and around her, her attempts to redress these perceived wrongs, and the sheriff's reaction to all of this. This is a case where it would be difficult, if not impossible, to separate the time spent on the claims on which she failed from the time spent on the successful claim. The claims and the facts supporting them are intimately related.

1995 WL 306166, at *6 (involving a THRA action). Appellant contends that the same is true in this case, as the work performed by her counsel often involved the global case, rather than each claim individually. Indeed, removing the time entries that are solely attributable to Appellant's claims related to religious and disability discrimination does not account for the over 80% reduction in Appellant's attorney's fees ordered by the trial court.[11] Thus, Appellant asserts that further reducing her fees to remove portions that might be attributable to her unsuccessful claims is both impossible and arbitrary.

Although Appellant generally raised the above arguments in the trial court in support of the attorney's fees request, neither the trial court's oral statements nor its written order address these arguments in any fashion. Indeed, as is evident from the above analysis, the trial court's ruling leaves us with more questions than it answers. For one, the trial court's findings with regard to the excessiveness of both the hours incurred and the hourly rate in the locality is so vague as to be practically nugatory for purposes of appellate review. Leaving out this factor, the bulk of the trial court's ruling seems to focus solely on the results obtained by Appellant in this matter. However, the Tennessee Supreme Court has generally cautioned against reliance on a single factor in determining a reasonable attorney's fee under the circumstances. *See generally **Wright***, 337 S.W.3d at 180 (declining to require trial courts to focus on a single factor, but rather directing trial courts to consider all of the relevant factors and circumstances). And nothing in the record indicates that the trial court in any way considered Appellant's arguments that this case was not an appropriate circumstance for near total reliance on that factor, given the high burden required of a TPPA claim and the resulting undesirability of the case, the alternative nature of Appellant's TDA claim, and the policy of protection inherent in civil rights and consumer protection-type actions, if applicable. Moreover, the trial court's order leaves us

---

[11] We will not tax the length of this opinion with a detailed recitation of the time entries that were solely attributable to the non-TPPA claims. Suffice it to say that they make up a small portion of the fees allegedly incurred.

with doubt as to whether the trial court considered All Nations' conduct with regard to the cancelled mediation, upon which the trial court had reserved attorney's fees, the contingent nature the representation, and the jury's actual verdict that the termination of Appellant's employment was unrelated to any alleged poor performance. Respectfully, these deficiencies coupled with the trial court's decision to identically mimic the jury's award of punitive damages undermines All Nations' suggestion that the fee award was actually the product of a careful weighing of all of the factors. In the absence of more specific findings by the trial court to support such a drastic reduction in fees, we must conclude that it failed to "clearly and thoroughly explain the particular circumstances and factors supporting [its] determination of a reasonable fee" in this case. *Id.* at 186. In this situation, a remand to the trial court is necessary. *See, e.g.*, *Ferguson Harbour*, 124 S.W.3d at 552–53; *Southwind Residential Properties*, 2017 WL 991108, at *13.

Appellant, however, requests that this Court avoid remand and independently review the record to determine a reasonable fee, as this Court did in *Lowe v. Johnson County*. In that case, the plaintiff requested a fee of over $96,000.00; the trial court awarded the plaintiff only $12,000.00. 1995 WL 306166, at *1. After noting a number of respects in which the trial court's ruling was deficient, we held that a more appropriate attorney's fee would be little more than $59,000.00. *Id.* at *8. Appellant asks that we perform the same review in this case and award her the full requested fee.

We decline Appellant's invitation. Since the decision in *Lowe*, the Tennessee Supreme Court had issued an opinion that emphasizes the high duty of trial courts to exercise their independent judgment in deciding the cases before them. *See generally Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). Based on this ruling, we have held that the more modern remedy for deficiencies in the trial court's explanation for its ruling is to vacate the ruling and remand to the trial court for the entry of a more illuminating order. *See Grissom v. Grissom*, 586 S.W.3d 387, 396–97 (Tenn. Ct. App. 2019) (quoting *Heun Kim v. State*, No. W2018-00762-COA-R3-CV, 2019 WL 921039, at *6 (Tenn. Ct. App. Feb. 26, 2019)) ("The more modern remedy, however, appears to be vacation of the trial court's ruling and remand for adequate findings, in light of the Tennessee Supreme Court's directive that this Court should not 'relieve trial courts of the 'high judicial function' required of judicial decision-making by conducting 'archeological digs' of the record in an effort to support a trial court's decision.'"). This is especially true in cases in which the trial court's judgment is reviewed only for an abuse of discretion. *Cf. In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (stating that this Court needs appropriate findings by the trial court to evaluate discretionary decisions, otherwise the appellate court is "unable to afford appropriate deference to the trial court's decision").

The trial court here is in a far better position to determine the appropriate attorney's fees in this case. As previously noted, this Court was not provided with a transcript of the trial on this cause, making it difficult to evaluate the attorney's fees incurred at trial, as

well as the overall amount of time that should have reasonably been expended in this case due to the complexity of the ultimate issues argued at trial. Moreover, the trial court in this case clearly believed, based on its experience, that the fees charged by Appellant's counsel were too great for the locality. Unlike in *Lowe*, however, we have nothing in the record to support a determination of what a reasonable fee for the locality might be. *See Lowe*, 1995 WL 306166, at *4 (noting that defendant's counsel submitted an affidavit as proof of his position as to the fee charged in the locality). As such, we would simply be speculating by attempting to determine the fee in the locality for purposes of RPC 1.5(a)(3).

Moreover, even if the *Riverside* rule is applicable to Appellant's TPPA claim, it does not appear to remove the trial court's discretion; a remand will therefore give the trial court an opportunity to expressly rule on Appellant's arguments concerning proportionality in conjunction with its consideration of the other applicable factors. *See City of Riverside*, 477 U.S. at 574 (allowing the trial court to consider a multitude of factors even when its rule is applicable); *Wright*, 337 S.W.3d at180–81 (holding that the amount of fees to be awarded is left to the trial court's subjective judgment after consideration of the appropriate factors); *Lowe*, 1995 WL 306166, at *1 (declining to award all of the requested attorney's fees based on consideration of all the applicable factors). Allowing the trial court to first pass its judgment upon these arguments is crucial due to the deferential standard of review that this Court must employ in evaluating a trial court's attorney's fee award. *Cf. St. John-Parker v. Parker*, No. E2018-01536-COA-R3-CV, 2020 WL 1491371, at *19 (Tenn. Ct. App. Mar. 27, 2020) ("Given the trial court's discretion, these arguments should be considered by the trial court in the first instance."). Under these circumstances, we conclude that the most appropriate remedy is to vacate the judgment of the trial court and remand for the entry of a more detailed order. We understand that such a remand will require Appellant to incur additional attorney's fees in the trial court proceedings following this appeal. The trial court should take this into account on remand.

**II.**

Appellant also seeks an award of attorney's fees incurred in this appeal. Appellant concedes that the award of fees on appeal is discretionary and that this court should consider a number of factors, including her success on appeal, the relative financial conditions of the parties, and whether the appeal was taken in good faith. *See, e.g.*, *(Cooley) v. Cooley*, 543 S.W.3d 674, 688 (Tenn. Ct. App. 2016) (quoting *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006)) ("'When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.'"). There can be no dispute that this appeal was taken in good faith. But while we know that at the time of the events in this case Appellant was making close to minimum wage, there is little in the record concerning All Nations' ability to pay or Appellant's current financial circumstances. We have also agreed with Appellant that the trial court's order was deficient in some respects. As such,

additional proceedings are necessary to resolve the dispute at the center of this appeal. Based on these considerations, we respectfully decline to award attorney's fees on appeal. Should an additional appeal be necessary, however, Appellant may also request payment of the fees incurred in this appeal, if warranted.

## CONCLUSION

The judgment of the Madison County Circuit Court is vacated and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee, All Nations Church of God d/b/a Covenant Child Care Development Center, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE